[No. 1510-1. Division One. December 28, 1973.]

WILLIAM H. SHAW et al., *Appellants*, v. MARLIN G. SJOBERG
et al., *Respondents*.

*Richard B. Sanders* and *Lee R. McNair,* for appellants.

*McMullen, Brooke, Knapp & Grenier* and *Larry B. Alexander,* for respondents.

JAMES, J.—Plaintiffs, William Shaw, owner-driver of an automobile, and Edwin Thompson, his passenger, brought this action to recover for bodily injury and property damage sustained in a collision with an automobile driven by defendant Marlin Sjoberg. Sjoberg cross-complained for damage to his automobile. A jury trial resulted in a verdict in Sjoberg's favor. We will refer to both plaintiffs as "Shaw."

Shaw's sole assignment of error concerns his attempt to impeach the testimony of an eyewitness to the collision called by Sjoberg. The witness testified that he observed

Shaw's car *prior* to the collision. His testimony was critical to Sjoberg's case.

On cross-examination Shaw's counsel asked the witness if he recalled "having testified under oath about the facts of this accident on a prior occasion?" The witness responded that he did. The next question was, "And do you recall testifying on that occasion that you did not see anything of [Shaw's automobile] until after the impact had occurred?" The witness answered, "No, I don't."

In rebuttal on the following day, by way of an offer of proof in the absence of the jury, Shaw said that the witness had testified at a traffic court trial that he did not see Shaw's automobile "at any time, at any place prior to the collision taking place." Sjoberg objected to the proferred evidence on the ground that Shaw had not produced a "transcript" of the testimony in traffic court and because the witness had been "excused." The objection was sustained.

[1] On appeal Sjoberg has not reasserted that a transcript was necessary, but we will affirm if the trial judge ruled correctly, though for the wrong reason. *Rawlins v. Nelson*, 38 Wn.2d 570, 578, 231 P.2d 281 (1951).

■ Sjoberg's principal argument on appeal is that Shaw did not lay a proper foundation for the impeaching evidence. The "foundation" rule is that:

[B]efore impeaching evidence can be introduced concerning contradictory statements made out of court by a witness, the time when, the place where, and the circumstances under which the contradictory statements were made by the witness must be given and opportunity afforded the witness to deny, admit, or explain them.

*Kellerher v. Porter*, 29 Wn.2d 650, 661, 189 P.2d 223 (1948). It is frequently stated that the purpose of the foundation rule is "to call the attention of the witness to the contradictory or inconsistent statements" so that he has "an opportunity to admit, deny, or explain making them." *Mojas v. McNutt*, 40 Wn.2d 61, 62, 63, 240 P.2d 928 (1952).

Shaw did not, in specific words, direct the witness' atten-

tion to the time, place and circumstances of his alleged prior inconsistent statement. But as Wigmore points out:

> If the preliminary question is to be useful as a warning to enable the witness to prepare to disprove the utterance or to explain it away if admitted, it must usually specify some details as to the occasion of the remark. The witness may perhaps without this understand the occasion alluded to; but usually he will not, and in such a case this specification of the details is a mere dictate of justice. The tendency of American courts, however, is to lose sight of the fact that this specification is a mere means to an end (namely, the end of adequately warning the witness), and to treat it as an inherent requisite, whether the witness really understood the allusion or not. The result of this is that unless the counsel repeats a particular arbitrary formula of question, he loses the use of his evidence, without regard to the substantial adequacy of the warning. Such a practice is impolitic and unjustified by principle.

3A J. Wigmore, *Evidence* § 1029 (J. Chadbourn ed. 1970).

Unfortunately, the cases and texts which have treated with the foundation rule have generally and uncritically rationalized it as a device designed to "protect the *witness*." (Italics ours.) *McCall v. Washington Co-op Farmers Ass'n,* 35 Wn.2d 337, 343, 212 P.2d 813 (1949). 3A J. Wigmore, *Evidence* § 1025 (J. Chadbourn ed. 1970) cites *King v. Wicks,* 20 Ohio 88, 91 (1851) to explain "[t]he reason and the nature" of the foundation rule.

> Again, witnesses are required, willing or unwilling, to come into court and testify. They should appear there under the full confidence that their *feelings and reputations* will be respected and protected, so far as is consistent with the ends of justice. The witness suddenly finds himself on trial for his veracity. . . . A word imperfectly heard, forgotten, or omitted, may change his whole meaning, and make him say what he never thought of. . . . [A bitter strife may ensue] which might all have been avoided by one minute's explanation in the first instance from the party implicated in the presence of those brought to impeach him.

(Italics ours.) The "feelings and reputations" of the wit-

nesses are not the primary consideration when the adequacy of the foundation is questioned. Their *credibility* is. The "credibility" of witnesses is the concern of the *litigant.* It is the litigant who is, in fairness, entitled to a "warning" that his witnesses may be impeached.

In any event, Washington does not adhere to a requirement of form over substance. A witness' memory of a particular occasion may be readily refreshed without explicit reference to time, place or persons present. *Nethery v. Nelson,* 51 Wash. 624, 99 P. 879 (1909); *State v. Walters,* 7 Wash. 246, 34 P. 938, 34 P. 1098 (1893). Washington agrees with 3A J. Wigmore, *Evidence* § 1029 (J. Chadbourn ed. 1970) that it is sufficient "that the witness' attention be *adequately* called to the alleged utterance, . . ." (Italics ours.)

Shaw's reference to the "testimony" given under "oath" made it clear that he was referring to the witness' testimony in traffic court. Sjoberg's witness was adequately alerted. A proper foundation for the impeaching testimony was established.

Sjoberg further argues that the impeaching testimony was properly excluded because his witness had been excused and was therefore deprived of the opportunity to rebut or explain the alleged inconsistent statement. The witness had testified on direct examination that he was in the armed services and was home on leave. He answered "Yes" when asked: "You have to go back what, tomorrow, I guess it is."

The statement of facts reveals only the court reporter's notation, "Witness Excused," at the conclusion of Shaw's cross-examination of the witness. A witness who has testified is subject to recall. It was Sjoberg's responsibility to have his own witness available to rebut the impeaching testimony. Only the court can "excuse" a witness who has testified or who has been subpoenaed.

Sjoberg next argues that if the impeaching testimony was improperly excluded, it was harmless error because Shaw's testimony on redirect examination was tantamount

to his testimony in support of his offer of proof. The record does not support Sjoberg's contention. Though consistent with his offer of proof, Shaw's redirect testimony did not contradict Sjoberg's witness specifically.

Finally, Sjoberg asserts that in any event, because Shaw was a party, his testimony would have been "incompetent." The assertion is palpably without merit.

It was prejudical error to exclude Shaw's impeachment testimony.

Reversed and remanded for a new trial.

HOROWITZ and FARRIS, JJ., concur.