[No. 19714-6-II. Division Two. February 6, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT CORNELIUS JOHNSON, *Appellant*.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Barbara L. Corey-Boulet, Deputy*, for respondent.

SEINFELD, J. — Robert Johnson appeals his convictions of felon in possession of a firearm, first degree assault, and second degree assault. We find that the cumulative effect of the following erroneous rulings denied Johnson a fair trial: (1) admitting Johnson's prior rape conviction to prove the unlawful possession charge; (2) allowing questions about Johnson's assertion of self-defense in an omnibus order to prove the assaults; (3) denying Johnson permission to impeach the State's key witness with a prior inconsistent statement; and (4) allowing the State to use a probation violation to impeach a defense witness. Thus, we reverse.

## FACTS

Philip Purcell, the victim of the assaults, provided the

following version of the events of December 2, 1994. He testified that he went to Mary Martin's residence looking for his girl friend at approximately 2:30 A.M. The girl friend was asleep, but he talked with Martin for 15 to 30 minutes before he left.

He returned several hours later. Johnson was present and yelled at him for upsetting Martin earlier. Johnson then produced a gun, which Purcell described as a large caliber silver or chrome revolver. Johnson ordered Purcell to leave, stated that he was "going to bust a cap," and ordered Purcell to his knees. When Purcell refused, Johnson shot him in his left knee.

Purcell fell and Johnson kicked him in the ribs and neck. Johnson then grabbed Purcell and "helped" him walk across the street, telling him that if he told the police he would "have your [mother's] house shot up and I'll kill you." Johnson then shot Purcell in his right thigh, causing him to fall again.

According to police testimony, when the police and paramedics arrived, Purcell first told them he had been shot by a robber. He later claimed it was "RJ" who had shot him. Purcell subsequently viewed a photo montage and identified Johnson as his assailant.

Police Detective Anthony Wilkerson testified that two days after the shooting, he went to Martin's residence where he observed Johnson crouched by a chair, "fidgeting" with something. When Johnson saw the police, he stood with his hands out. After Johnson was arrested and removed from the house, Wilkerson found a .357 chrome revolver protruding from under the chair where Johnson had been crouching.

The State charged Johnson with being a felon in possession of a firearm and two counts of first degree assault. A month before trial, Johnson and his attorney signed an omnibus order indicating that the general nature of the defense was "general denial/self-defense." Four days before trial, Johnson revealed that he was going to rely upon an alibi defense, through the testimony of his brother, Rodney

60

Bates. As a sanction for the dilatory disclosure of the alibi defense, the trial court ruled that if Johnson testified, the State could use the self-defense claim asserted on the omnibus order to impeach him. The court also ruled that the State could use the self-defense claim in cross-examining defense witnesses Bates and Martin. The trial court further ruled that it would admit Johnson's rape conviction, notwithstanding Johnson's willingness to stipulate to a prior conviction for a "violent offense."

At trial, Betty Ethridge testified for the State. Sometime after the shooting, she observed Purcell's mother beating Johnson on the chest and screaming, "You're the one that shot my son." Ethridge also thought she heard Johnson say "something about he was sorry." According to Ethridge, Johnson did not deny the shooting and, when she asked Johnson if he did it, he said " 'Well, yeah . . . . But I—but I guess, like, in self-defense' or something."

The defense cross-examined Purcell about his claim that he would receive a monetary benefit if Johnson were convicted. After Purcell denied making such a claim, the defense sought to impeach him by questioning its witness, Martin, about a statement that Purcell allegedly had made in her presence. Allegedly, Purcell had said that "all he needed was a conviction, and he would be paid money." The trial court sustained the State's hearsay objection to the question. It reasoned that Purcell's statement was inadmissible hearsay and did not qualify as a prior inconsistent statement because the defense had not confronted him with the specific statement during its examination of him.

The defense produced two witnesses to support its theory that Johnson did not shoot Purcell. Bates, Johnson's 17-year-old brother, provided an alibi, testifying that Johnson was sleeping at their home at the time of the shooting. And Martin, Johnson's girl friend, said that when Purcell came to her house at 6:45 A.M., he was arguing about money with another man whom she had never seen before and that Johnson was not present. In its cross-

examination of Martin, the State impeached her with a 1993 probation violation and her past use of aliases.

The case went to the jury late on a Friday afternoon, and the jury deliberated for a full day the following Monday. On Tuesday morning, the husband of a juror left a message with jury administration saying that his wife could not continue as a juror. The judicial assistant testified that she then telephoned the juror. The juror told the judicial assistant that she was "so nervous" about participating, about "talking in a group, that she can't even think." She did not "think that she [could] deliberate fairly for the defendant." The juror began crying when the judicial assistant asked if it would help if the judge spoke to her.

After hearing the judicial assistant's testimony, the judge brought in the presiding juror and asked for a "yes" or "no" response to whether the ailing juror had "participated in deliberations." The presiding juror said "no."

The court denied Johnson's motion for a mistrial, seated an alternate juror, and instructed the jury to start deliberations anew. The reconstituted jury found Johnson guilty of unlawful possession of a firearm, one count of first degree assault, and one count of second degree assault, with a special verdict finding that a deadly weapon was used in the second degree assault.

At sentencing, Johnson argued that the "three strikes" law was unconstitutional. The trial court upheld its constitutionality and sentenced Johnson to life in prison without the possibility of parole.

### I. Admission of the Rape Conviction

 Johnson claims that the prejudicial effect of his prior rape conviction substantially outweighed its probative value, in light of his offer to stipulate that he had a previous conviction for a violent offense. ER 403. The State argues that it was entitled to decline the stipulation and, in any event, the admission of the prior conviction was harmless. *See State v. Pirtle*, 127 Wn.2d 628, 652, 904 P.2d 245 (1995); *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

We use a manifest abuse of discretion standard in reviewing a trial court's balancing of the probative value of prior crime evidence against the danger of unfair prejudice. ER 403; *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987). The availability of other means of proof is a factor in deciding whether to exclude prejudicial evidence. ER 403 cmt. Evidence likely to provoke an emotional response rather than a rational decision is unfairly prejudicial. *Rice*, 48 Wn. App. at 13 (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 106, at 250 (2d ed. 1982)).

To prove the charge of unlawful possession of a firearm, the State had to establish that Johnson previously had been convicted of a serious offense. RCW 9.41.040(1). "Serious offense" includes any crime of violence. RCW 9.41.010(12)(a). Johnson offered to stipulate to a prior conviction for a violent offense, without naming the offense.

■ The situation here is similar to that in the recent United States Supreme Court decision in *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). *Old Chief* also involved a prosecution for felon in possession of a firearm and for assault. 117 S. Ct. at 647. In *Old Chief*, as here, the issue was the defendant's legal status as a felon. And in *Old Chief*, as here, there was no factual connection between the earlier crime and the charged offenses. Further, in *Old Chief*, as in this case, the defendant offered to stipulate to a prior felony conviction. 117 S. Ct. at 648.

The Court acknowledged the standard rule that

a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense.

*Old Chief*, 117 S. Ct. at 651. But,

[t]his recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application when the point at issue

is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.

*Old Chief*, 117 S. Ct. at 654-55. The choice of evidence for a prior conviction element is

not between eventful narrative and abstract proposition, but between propositions of slightly varying abstraction, either a record saying that conviction for some crime occurred at a certain time or a statement admitting the same thing without naming the particular offense . . . .

. . . [T]he functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other.

*Old Chief*, 117 S. Ct. at 655. The *Old Chief* Court concluded that the trial court abused its discretion by allowing evidence of the prior assault conviction because it was unduly prejudicial, especially in light of the proffered stipulation. 117 S. Ct. at 655.

Similarly here, Johnson's proffered stipulation, along with an appropriate jury instruction, would have proved conclusively that Johnson was a felon. Thus, the probative value of the conviction, as compared to the stipulation, was negligible. The unfair prejudice was significant, i.e., there was a significant risk that the jury would declare guilt on the two assault charges based upon an emotional response to the rape conviction rather than make a rational decision based upon the evidence. *Old Chief*, 117 S. Ct. at 653; *Rice*, 48 Wn. App. at 13. Consequently, it was error to admit the prior rape conviction.

## II. Use of Defendant's Statement on Omnibus Order

Johnson next claims trial court error in overruling his objections to the State's cross-examination of Bates and Martin. He argues that the State's questions about his assertion of self-defense on the omnibus order were inappropriate because he presented the alternative defenses of

"general denial and/or self-defense" merely to notify the State of his possible trial strategy, not as a factual admission about the incident. The State contends that a defendant's endorsement of an affirmative defense on an omnibus order is an admission of party opponent, admissible in evidence pursuant to ER 801(d)(2).

The reference to the omnibus order was indirect. The prosecutor asked Bates on cross-examination, "Are you aware that . . . [Johnson] was claiming he acted in self-defense?" And on cross-examination of Martin, the prosecutor asked "Isn't it true that before I spoke with you, Mr. Johnson was claiming that he acted in self-defense?"[1] Defense counsel did not object on the basis of inadequate foundation. ER 602.

■■ The only appropriate evidentiary purpose for the questions was as substantive evidence that Johnson committed the crime. Johnson's statement on the omnibus order clearly was not admissible to impeach Bates and Martin because " 'witness[es] cannot be impeached by statements of others for which [they are] not responsible and which have not been approved by [them].' " *State v. Williams*, 79 Wn. App. 21, 27, 902 P.2d 1258 (1995) (quoting *Singer v. Metz Co.*, 101 Wn. 67, 72, 171 P. 1032 (1918)). Because Johnson did not testify, the questions were not appropriate to impeach his truthfulness. *See Old Chief*, 117 S. Ct. at 648 n.2. But by suggesting that Johnson had claimed self-defense, the questions suggested that he committed the charged act.

■ We conclude that the substantive use of Johnson's omnibus order under the facts here was improper. When defense counsel pleads alternative and inconsistent defenses on behalf of his client at an omnibus hearing, the State may not use the attorney's pleadings against the defendant as substantive evidence that the defendant committed the charged criminal act. *Williams*, 79 Wn. App. at 30. As the

---

[1] At oral argument before this court, the State's attorney acknowledged that these questions referred to Johnson's statement on the omnibus order regarding his defense theories of "general denial/self-defense."

*Williams* court reasoned, pleadings of an alternative or inconsistent nature are "directed primarily to giving notice and lack the essential character of an admission." 79 Wn. App. at 29 (citing MCCORMICK ON EVIDENCE § 257, at 150-51 (John W. Strong ed., 4th ed. 1992).

The State seeks to distinguish *Williams*, contending that it excludes only an omnibus order that the defendant failed to sign. In *Williams*, defense counsel, but not the defendant, signed the order. We held that the attorney's statement did not qualify as an admission of the client. *Williams*, 79 Wn. App. at 30.

The focus in *Williams* was on whether the attorney's statement qualified under ER 801(d)(2) as a nonhearsay statement. The focus here is on whether a statement on an omnibus order constitutes a factual admission. To the extent that *Williams* dealt with this issue, the client's endorsement of the omnibus order does not make the *Williams* rationale inapplicable. To allow the admission of an omnibus order that the client happened to sign and to exclude an order that the client, fortuitously, did not sign would cause the admission of evidence to turn on factors unrelated to the search for truth or justice.

Further, a trial court's imposition of discovery sanctions must be consistent with constitutional mandates. *See* CrR 1.1;[2] *State v. Grant*, 10 Wn. App. 468, 474-75, 519 P.2d 261 (1974) (in the absence of totally inexcusable neglect, a court may not exclude evidence of alibi as a sanction for failure to comply with the alibi notice statute); *see also State v. Smith*, 67 Wn. App. 847, 861-62, 841 P.2d 65 (1992) (a trial court's discretion under CrR 4.7(h)(7)(i) must be measured in view of the court's responsibility to ensure a defendant's constitutional right to effective assistance of counsel). To admit a compelled omnibus order into evidence as a sanction for a discovery violation raises Fifth Amendment concerns. *See State v. Johnston*, 27 Wn. App.

[2]CrR 1.1 provides in pertinent part: "These rules shall not be construed to affect or derogate from the constitutional rights of any defendant."

73, 75-76, 615 P.2d 534 (1980)[3] (discovery order compelling criminal defendant to furnish testimonial information violates constitutional privilege against self-incrimination). The Fifth Amendment prevents the use of legal process " 'to force from the lips of the accused individual' " inculpatory evidence. *Johnston*, 27 Wn. App. at 75-76 (quoting *Bellis v. United States*, 417 U.S. 85, 88, 94 S. Ct. 2179, 40 L. Ed. 2d 678 (1974)).

Here, because of the requirements of the criminal rules, Johnson faced possible contempt sanctions if he did not state the general nature of his defense at the omnibus hearing. CrR 4.7(b)(1); CrR 4.7(b)(2)(xiv); CrR 4.7(h)(7); *State v. Nelson*, 14 Wn. App. 658, 666-67, 545 P.2d 36 (1975). CrR 4.7(b)(1) requires a criminal defendant to disclose the names and addresses of any defense witnesses no later than the omnibus hearing, and CrR 4.7(b)(2)(xiv) authorizes the trial court to require the defendant to state the general nature of the defense. *See also* CrR 4.5. The purpose of CrR 4.5 and 4.7 is to accelerate the timing of disclosure and thereby prevent last minute surprises and the resulting continuances and trial disruption. *Nelson*, 14 Wn. App. at 664.

The reason that a trial court may compel pretrial disclosure of information without infringing upon a defendant's Fifth Amendment rights is that such information "must ultimately come to light." *Nelson*, 14 Wn. App. at 664; CrR 4.7(h)(7) (trial court may impose sanctions "as it deems just under the circumstances" for the failure to comply with discovery orders). But an abandoned affirmative defense theory never need "come to light" if the State is not permitted to use it substantively. By allowing use of the omnibus order statement at trial as substantive evidence, the court forced Johnson to produce potentially inculpatory evidence from his own lips. *Johnston*, 27 Wn. App. at 75. Thus, we conclude that the trial court erred in allowing the challenged

---

[3]*See also State v. Hutchinson*, 111 Wn.2d 872, 883-84, 766 P.2d 447 (1989) (when a criminal defendant raises a defense of diminished capacity and is compelled to submit to a psychiatric examination by an expert, the expert may not testify as to incriminatory statements by the defendant).

cross-examination questions as substantive evidence to prove the charged crime.

We do not suggest that a defendant may violate criminal discovery rules with impunity. In some instances, a trial court may sanction the intentional and purposeful failure to obey trial court discovery orders by finding the defendant in contempt and ordering additional confinement. *Nelson*, 14 Wn. App. at 665-67. In other instances, a continuance may be appropriate. CrR 4.7(b), (h)(7)(i).

Finally, we wish to make it clear that we do not reach the issue of the omnibus order's use for impeachment purposes. *But see State v. Acosta*, 34 Wn. App. 387, 391-92, 661 P.2d 602 (1983), *rev'd on other grounds*, 101 Wn.2d 612, 683 P.2d 1069 (1984); *State v. Dault*, 19 Wn. App. 709, 716-18, 578 P.2d 43 (1978). Because Johnson did not testify, that issue is not before us.

### III. Impeachment of State's Witness with a Prior Inconsistent Statement

Johnson sought to impeach Purcell with Purcell's prior out-of-court statement that was not only inconsistent with his in-court testimony, but also showed his motive to be untruthful. In an offer of proof, Martin indicated that she heard Purcell mention that he might obtain victim impact funds if Johnson were convicted.

Johnson confronted Purcell with these statements on cross-examination, as follows:

Q: [Defense Counsel] Okay. It is your understanding that the more severe the injury, the higher the payment is to you?

A: [Purcell] Yes. That's what I heard.

Q: Okay. And that's something you believe; isn't that correct?

A: Yes.

Q: Okay. You also — it is also your belief that you can't reap this benefit unless someone is actually convicted of an offense; isn't that correct?

A: *I don't know nothing about that.*

Q: All right. It is your understanding if you didn't blame somebody for this, for the fact that you have been shot, you wouldn't reap any monetary award?

A: *No, that's not it.*

Q: Okay. Didn't you tell [your girl friend] that very same thing?

A: *No, I didn't.*

Q: That the outcome of this trial — that your ability to receive money while you were in prison depended on the outcome of this trial?

A: *No.*

. . . .

Q: Isn't one of your interests here today that you are soon to collect some money, you believe?

A: *No.*

(Emphasis added.) During direct examination of Martin, Johnson made the following offer of proof out of the presence of the jury:

Q: Miss Martin, do you recall having a conversation with Mr. Purcell regarding the recovery of some moneys in connection with this particular incident?

A: Recovery.

Q: In other words, that he was going to collect some money.

A: Yes. He was talking about it when we were there at that apartment, that he had to fill out these papers that was given to him for a victims panel. He said all he needed was a conviction, and he would be paid money.

Q: Did he tell you how much money?

A: He said 7,000 both shots.

Q: 7,000 what?

A: 7,000, 7,000. Each shot he said he would and then all the —

he said he would have to go to a psychiatrist and every — all bills paid.

Q: Did he indicate to you whether he would be paid more money depending on how many times he claimed he had been shot?

A: Yes. He did say that.

Q: Do you recall what he said?

A: He just said he'd get paid for each shot. All his bills would be paid. He said all he had to go do was go talk to a shrink, and he was laughing and drinking and celebrating it. On a conviction, he said he'd be paid, and he said he was going to get paid.

The trial court excluded Martin's testimony because defense counsel's cross-examination questions of Purcell were insufficiently specific. *See* ER 613(b).[4]

■ We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Ortiz*, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992). Discretion is abused if it is based on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ ■ A defendant's right to impeach a prosecution witness with evidence of bias or a prior inconsistent statement is guaranteed by the constitutional right to confront witnesses. *Davis v. Alaska*, 415 U.S. 308, 316-18, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Dickenson*, 48 Wn. App. 457, 469, 740 P.2d 312 (1987). Thus, any error in excluding evidence is presumed prejudicial and requires reversal unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place. *Davis*, 415 U.S. at 318; *State v. Fitzsimmons*, 93 Wn.2d 436, 452, 610 P.2d 893, 18 A.L.R.4TH 690 (1980); *Dickenson*, 48 Wn. App. at 470.

---

[4]ER 613(b) provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2)."

Johnson argues that the constitutional right to confront witnesses requires that a criminal defendant have wide latitude to impeach a State's witness. *Dickenson*, 48 Wn. App. at 466. The State argues that Johnson did not lay a proper foundation for Martin's testimony because he did not ask Purcell about a specific conversation with Martin.

 Prerule case law required the examiner, before introducing extrinsic evidence of a prior inconsistent statement, to direct the declarant's attention to the exact content of the allegedly contradictory statement as well as to the time and place where the declarant made the statement and to the persons present.[5] Under ER 613(b), however, it is sufficient for the examiner to give the declarant an opportunity to explain or deny the statement, either on cross-examination or after the introduction of extrinsic evidence. McCormick on Evidence, *supra*, § 37, at 121-22; *see also United States v. McLaughlin*, 663 F.2d 949, 953 (9th Cir. 1981); *Shaw v. Sjoberg*, 10 Wn. App. 328, 331, 517 P.2d 622 (1973). The traditional "foundation questions" on cross-examination are now an optional tactic rather than a mandatory requirement. *See* 5A Karl B. Tegland, Washington Practice: Evidence Law and Practice, § 258, at 317 (3d ed. 1989). If there is a foundation requirement for proof of bias, it is, at most, a foundation similar to that for a prior inconsistent statement. McCormick on Evidence, *supra*, § 39, at 135.[6]

Here, Johnson's questions went to both Purcell's prior inconsistency and his bias, and defense counsel laid an adequate foundation to impeach Purcell with the proferred testimony. Defense counsel directed Purcell's attention to the prior statement, referred to the subject matter, and provided Purcell with an opportunity to explain or deny it.

---

[5]*See, e.g., Mojas v. McNutt*, 40 Wn.2d 61, 240 P.2d 928 (1952); *State v. Harmon*, 21 Wn.2d 581, 590, 152 P.2d 314 (1944).

[6]The purposes of the foundation requirement for extrinsic evidence of bias or inconsistent statements are: (1) to avoid unfair surprise to the adversary, (2) to give the witness a chance to explain, and (3) to save time, as an admission by the witness may make extrinsic proof unnecessary. McCormick on Evidence, *supra*, § 37, at 120; § 39, at 134.

It follows that the trial court erred by not allowing the questions. *McLaughlin*, 663 F.2d at 953; *Sjoberg*, 10 Wn. App. at 331.

## IV. Impeachment of Defense Witness

Johnson argues that the trial court improperly allowed the impeachment of Martin with her past uses of aliases. We disagree.

■■■■■ We find no Washington cases deciding whether it is proper to impeach a witness by showing her uses of aliases. ER 608(b) provides that, for purposes of attacking a witness's credibility, specific instances of conduct may, in the discretion of the court, be inquired into on cross-examination if probative of truthfulness or untruthfulness. ER 608(b). The cross-examiner must have a good faith basis for the inquiry. 5A TEGLAND, *supra*, § 232, at 205.

The use of an alias is a specific instance of conduct that may, depending upon circumstances, be probative of truthfulness or untruthfulness. Conduct involving fraud or deception is indicative of the witness's general disposition with regard to truthfulness. 5A TEGLAND, *supra*, at 207.

Here, police records indicate that Martin had used four different aliases in the past. When a person gives multiple false names to the police, the use of those names indicates an intent to deceive and bears directly on that person's general disposition with regard to truthfulness. Thus, the trial court did not abuse its discretion when it allowed the State to cross-examine Martin with respect to her past use of aliases.

This conclusion is consistent with *People v. Walker*, 83 N.Y.2d 455, 461-62, 633 N.E.2d 472, 611 N.Y.S.2d 118 (1994), in which the court stated:

> Manifestly, a [subject's] use of a false name or other inaccurate pedigree information is an indication of dishonesty that goes to the very heart of the question of that individual's testimonial credibility. Giving false pedigree information in situations where one is called upon to be truthful is, by defini-

tion, an act of prevarication . . . . Accordingly, such evidence is generally "both relevant and material to the credibility, veracity, and honesty" of the witness and is therefore a proper subject for cross-examination.

(Citations omitted.)

 Johnson also argues that the State improperly impeached Martin with her failure to comply with a probation order. We agree.

Prior convictions are not relevant unless they have some tendency to show the witness's ability to tell the truth. ER 609(a)(2);[7] *State v. Jones*, 101 Wn.2d 113, 118-19, 677 P.2d 131 (1984). Martin's failure to comply with a probation order had no bearing upon her propensity for truthfulness. Thus, it was error to allow the State to cross-examine Martin about this conviction.

## V. Juror Substitution

Johnson contends that the trial court denied him a fair trial before an impartial jury when it denied him the opportunity to voir dire the juror who became unable to serve and the alternate juror. The State argues that Johnson waived any objection to the juror substitution because he failed to request voir dire of the alternate juror.

 The right to an impartial, 12-person jury is of constitutional magnitude, and thus is not waived by any failure to object at trial. *See State v. Cuzick*, 85 Wn.2d 146, 149, 530 P.2d 288 (1975). CrR 6.5 permits the trial court to discharge a juror during deliberations and replace that juror with an alternate. CrR 6.5 contemplates a formal proceeding, which *may* include brief voir dire, to insure that an alternate juror who has been temporarily excused and recalled has remained protected from "influence,

---

[7]ER 609(a) provides: "For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime . . . (2) involved dishonesty or false statement, regardless of the punishment."

interference or publicity, which might affect that juror's ability to remain impartial." CrR 6.5; *State v. Ashcraft*, 71 Wn. App. 444, 462, 859 P.2d 60 (1993). The court must then instruct the jury to disregard all previous deliberations and begin deliberations anew. CrR 6.5. We review the trial court's decision to replace a juror with an alternate juror under an abuse of discretion standard. *Ashcraft*, 71 Wn. App. at 461.

Based on the record before us, we cannot say that the juror substitution violated Johnson's right to an impartial jury. Nonetheless, we believe that the preferred procedure would be for the trial court, in the presence of counsel and the defendant, to engage in a colloquy with the juror seeking release. In this way, the court could verify that the juror was incapacitated and not seeking release because of intimidation or for any other improper reason. Further, it would be prudent to verify that the alternate had not been exposed to outside influence or interference during any period of absence from the court. *See Cuzick*, 85 Wn.2d at 149.

### VI. Sufficiency of the Evidence

Johnson contends that the evidence was insufficient to prove that it was he who shot Purcell. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 209, 829 P.2d 1068 (1992). Circumstantial evidence is considered equally as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The testimony of Purcell and Ethridge provided substantial evidence to support the guilty verdict as to each count. Purcell identified Johnson as his assailant and testified that Johnson shot him the first time in the knee after

threatening to "bust a cap" and shot him the second time after threatening to kill him and shoot up his mother's house if he told the police. Purcell described Johnson's gun as a large caliber revolver. A .357 caliber revolver was found in Johnson's girl friend's house two days after the assaults. Ethridge corroborated Purcell's testimony. Thus, we conclude that a rational trier of fact could have found guilt as to each verdict beyond a reasonable doubt.

## VII. Cumulative Error Doctrine

Although none of the errors discussed above alone mandate reversal, it appears reasonably probable that the cumulative effect of those errors materially affected the outcome. *See State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994). First, the admission of Johnson's rape conviction and Johnson's prior claim of self-defense were prejudicial because they improperly allowed the jury to infer that Johnson was a bad character and that his defense was not credible. The refusal to allow the impeachment of Purcell with his prior inconsistent statement implicated Johnson's constitutional rights to confront adverse witnesses and reasonably could have influenced the jury's evaluation of Purcell's credibility. *Russell*, 125 Wn. 2d at 93. Although the admission of Martin's probation violation appears harmless, it added to the cumulative effect of a fundamentally unfair trial.

The jury reasonably could have reached a different outcome absent these errors. Consequently, we must reverse the conviction.

## VIII. Constitutionality of Three Strikes Law

Johnson's argument that the "three strikes" law is unconstitutional lacks merit. The Supreme Court has considered and rejected the arguments he submits. *See State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997); *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996); *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996).

We reverse and remand for a new trial.

HOUGHTON, C.J., and MORGAN, J., concur.