[No. 22989-7-II.    Division Two.    April 16, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JACOB J. RIVERA, *Appellant*.

*George A. Steele*, for appellant (appointed counsel on appeal).

*Gary P. Burleson, Prosecuting Attorney*, and *David Brian St. Pierre, Deputy*, for respondent.

HOUGHTON, J. — Jacob J. Rivera appeals his convictions of assault in the second degree with a deadly weapon and unlawful possession of a firearm in the first degree. We affirm.

## FACTS

On October 26, 1997, Theresa Brady, Adria Swenson, Jessica Frary, and Dayleann Gonzalez-Montanez were browsing for candy at Brad's Quick Stop in Shelton. Jasmin Nelson entered the store and began a conversation with Swenson. During their conversation, Brady came around a corner and, seeing Swenson speaking to Nelson, told Swenson, "Don't talk to her," then, looking straight at Nelson, said, "I don't like her." Nelson told Swenson that she was going to go outside and get her boyfriend, Rivera.

Rivera entered the store and yelled at Brady, "Bitch, why are you tripping on my girl friend?" He told Brady that she and Nelson were going to fight when Brady went outside. Brady responded that she had just gotten out of "juvy" and did not want to fight. Rivera became angry and yelled at her that they were going to fight, then left the store.

A few minutes later Rivera and Nelson came back into the store together. Rivera handed Nelson a black pocket knife and asked her to stab Brady. Nelson refused, handed

the knife back to Rivera, and left the store. Rivera stared at Brady as he talked to some of his friends. The girls purchased some candy, then left the store.

Nelson decided to leave the parking lot, said good bye to Swenson, and walked over to a car that was by the gas pumps. But Rivera caught up to her, told her to stab Brady, and handed her the black pocket knife again. Rivera pulled her away from the car and, with one arm around Nelson's shoulder and the other arm around her waist, led her back to where Brady was standing. Rivera told her to "[d]o what you got to do," and shoved her towards Brady. As Brady stood outside the door to the store, Nelson said, "What's up, bitch," and stabbed Brady with the pocket knife. Nelson closed the knife and handed it back to Rivera. Rivera told Brady that if she told anyone, she would be stabbed again. Nelson repeated, "Yeah, if you tell I'll stab you again."

Rivera and Nelson fled the scene, and Brady was taken to the hospital by Swenson, Frary, and Gonzalez-Montanez. At approximately 6:45 P.M., Shelton police officers responded to a call from the hospital, regarding the stabbing of Brady. At the hospital, Swenson, Frary, and Gonzalez-Montanez told the police officers that they had witnessed the stabbing and had brought Brady to the hospital.[1] A police officer took all three girls to the police station and obtained written statements from them.

Later that evening, Shelton police officers Pfitzer and Lingle arrested Rivera and Nelson at Rivera's mother's residence. When first confronted, Rivera was upstairs and displayed to the officers what appeared to be a rifle. At the insistence of his mother, Rivera put down the rifle and surrendered to the officers. While Rivera was in custody at the police station, he told Officer Lingle that he had a .22 caliber rifle and a BB gun in his bedroom and explained that during the arrest he was merely bringing the guns downstairs to the officers. Officers Pfitzer and Lingle returned to Rivera's home to retrieve the rifle and BB gun.

---

[1]Brady was later transported to Harborview Medical Center for surgery relating to her stab wounds.

When Rivera's mother turned the rifle over to the officers, however, a bolt was missing. Rivera's mother believed that Rivera had only the rifle and that the bolt was at a relative's residence. At trial, Nelson testified that the bolt had been in the rifle earlier that day.

On October 29, 1997, Rivera was charged by information with assault in the first degree, RCW 9A.36.011(1)(a) and/or (c), and RCW 9A.08.020; and unlawful possession of a firearm in the first degree, RCW 9.41.040(1)(a). On January 9, 1998, the information was amended, adding a deadly weapon enhancement to the assault charge.

At the omnibus hearing, defense counsel requested surveillance videotapes and copies of still photographs that were to be introduced as evidence at trial. Defense counsel also requested disclosure of any agreements or understandings between Nelson and the State. The State agreed to disclose such evidence if and when it existed.

On November 26, 1997, a status hearing was held to review whether witness interviews had occurred. The court was told that defense counsel had not conducted witness interviews and the court ordered them to begin the following week. The State reported that there were no agreements or understandings with Nelson. On January 2, 1998, a pretrial hearing was held. The parties again told the trial court that, due to scheduling difficulties, defense counsel had not conducted witness interviews.

On January 13, 1998, a *Knapstad*[2] hearing was held. Rivera contended that the unlawful possession of a firearm count should be dismissed because the uncontroverted evidence is that the .22 lacked a bolt, thus rendering it incapable of firing. Rivera asserted that if the rifle were incapable of being fired, it could not be a firearm within the meaning of the statute. The court denied the motion, finding that Nelson's testimony that the rifle did have a bolt, created an issue of material fact for the jury to decide.

During the hearing, defense counsel also moved to suppress Rivera's prior criminal record. Defense counsel of-

---

[2]*State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986) (pretrial motion to dismiss based upon insufficient evidence).

fered to stipulate that Rivera had the requisite felony for the firearms charge. The State declined to stipulate, stating that it had the right to prove its case. The court determined that it could not force the State to accept the stipulation and that the State could put on its "full case" as long as it was relevant to an issue to be determined.

Defense counsel then moved to dismiss the State's case for failure to provide a copy of a surveillance photograph that was to be admitted as evidence at trial. The court denied the motion, but it required the State to provide a copy of the photograph as soon as possible.

On January 16, 1998, Rivera was found guilty of assault in the second degree and unlawful possession of a firearm. On February 26, 1998, Rivera moved for a new trial, contending that Nelson had lied when she testified at trial that her motive for testifying against Rivera was to do her civic duty to tell the truth. Rivera asserted that newly discovered evidence revealed that Nelson had exchanged her testimony for prosecutorial consideration in her own case. Rivera's motion was denied. He now appeals.

## ANALYSIS
### Admission of Prior Convictions

Rivera contends that the prejudicial effect of admitting his prior convictions for robbery and burglary[3] substantially outweighed their probative value, in light of his offer to stipulate that he had the requisite serious offense conviction for the firearm charge. ER 403. The State counters that it was not obligated to accept Rivera's stipulation, and, even if error, the admission of Rivera's prior convictions was harmless.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Matthews*, 75 Wn. App. 278, 877 P.2d 252 (1994), *review denied*, 125 Wn.2d 1022 (1995).

---

[3]The State admitted into evidence exhibit 7, a certified copy of Rivera's robbery in the first degree conviction, and a stipulation that Rivera was convicted in juvenile court of five counts of burglary in the second degree.

Abuse of discretion means that the trial court exercised its discretion upon untenable grounds or for untenable reasons, or that the discretionary act was manifestly unreasonable. *State v. Rice*, 48 Wn. App 7, 11, 737 P.2d 726 (1987) (citations omitted). "The availability of other means of proof is a factor in deciding whether to exclude prejudicial evidence." *State v. Johnson*, 90 Wn. App. 54, 62, 950 P.2d 981 (1998) (citing ER 403 cmt.). Evidence that is likely to elicit an emotional response, rather than a rational decision, is unfairly prejudicial. *Rice*, 48 Wn. App. at 13.

To prove the charge of unlawful possession of a firearm in the first degree, RCW 9.41.040(1)(a), the State had to establish that Rivera previously had been convicted of a serious offense.[4] RCW 9.41.010(12) lists the serious offenses that bar a felon from possessing a gun, two of which Rivera committed: robbery and burglary.[5] Rivera offered to stipulate that he had the requisite felony conviction for the first degree firearm possession, in order to avoid having to expose his criminal history to the jury.

In *Johnson*, we recognized the standard rule that "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." *Johnson*, 90 Wn. App. at 62 (quoting *Old Chief v. United States*, 519 U.S. 172, 182, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)). But, as the Supreme Court determined in *Old Chief*, that "choice" has virtually no application when the purpose for admitting the evidence is solely to prove the element of prior conviction. *Old Chief*, 519 U.S. at 190; *see also Johnson*, 90 Wn. App. at 62. The Supreme Court thus held that a trial court abuses its discretion when it spurns a defendant's offer to stipulate and admits a record of defendant's prior crimes thereby

---

[4]Under RCW 9.41.040(1)(a), a person is guilty of unlawful possession of a firearm in the first degree, "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense . . . ."

[5]"[S]erious offense" includes any other felony. RCW 9.41.010(12)(o).

raising the risk of a verdict tainted by improper consider-
ations when the purpose of the evidence is solely to prove
the element of prior conviction. *Old Chief*, 519 U.S. at 174.
*See also* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE
§ 106 (2d ed. 1982).

Similarly, in *Johnson*, we held that the trial court abused
its discretion in admitting evidence of the defendant's prior
rape conviction to prove unlawful possession of a firearm
and assault because it was unduly prejudicial, especially in
light of the proffered stipulation. *Johnson*, 90 Wn. App. at
63 (citing *Old Chief*, 519 U.S. at 191). We reasoned that the
defendant's stipulation would have proved conclusively
that the defendant had previously been convicted of a seri-
ous offense. *Johnson*, 90 Wn. App. at 63. Thus, the proba-
tive value in admitting evidence that defendant was previ-
ously convicted of rape, as compared with the stipulation,
was negligible, but the unfair prejudice was significant.
*Johnson*, 90 Wn. App. at 63.

Here, as in *Old Chief* and *Johnson*, the most the jury
needed to know was that Rivera's prior convictions fell
within the class of crimes that the Legislature specified
would prevent a convict from possessing a gun. This point,
however, could have been readily made in Rivera's stipula-
tion and underscored in the court's jury instructions. *Old
Chief*, 519 U.S. at 190-91; *Johnson*, 90 Wn. App. at 63.
Thus, the probative value in admitting evidence that Rivera
had been previously convicted of robbery and burglary was
negligible; but the risk that the jury's decision would be
made on an improper basis was great. *See Johnson*, 90 Wn.
App. at 63. As the Supreme Court stated in *Old Chief*,
"[T]he risk that a jury will convict for crimes other than
those charged—or that, uncertain of guilt, it will convict
anyway because a bad person deserves punishment—cre-
ates a prejudicial effect . . . ." *Old Chief*, 519 U.S. at 180.

The State argues that the holdings in *Old Chief* and
*Johnson* apply only to exceptional emotion-evoking prior
crimes, such as rape. Although the unfair prejudice in
*Johnson* was based upon the emotional nature of defend-

ant's prior rape conviction, unfair prejudice occurs whenever the probative value is negligible, but the risk that a decision will be made on an improper basis is great. Here, the likelihood was great that the jury's verdict would be tainted by their emotional response to evidence that Rivera was previously convicted of robbery and five counts of burglary. *See Rice,* 48 Wn. App. at 13. Thus, the trial court erred when it refused to accept Rivera's stipulation and admitted evidence of Rivera's prior crimes for robbery and burglary.

■ Nevertheless, we hold that the trial court's error was harmless. In determining if a nonconstitutional error of this type is harmless, we evaluate whether it is more probable than not that the error materially affected the outcome of trial. *Johnson,* 90 Wn. App. at 74; *United States v. Jones,* 159 F.3d 969, 979 (6th Cir. 1998). *See State v. Rivers,* 129 Wn.2d 697, 706, 921 P.2d 495 (1996). Here, the evidence, including the testimony of three eyewitnesses other than Nelson, the surveillance videotape, and photographs,[6] leads to the conclusion that the exclusion of Rivera's prior crimes would not have resulted in a different verdict.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG, A.C.J., and HUNT, J., concur.

Petition for review granted and case remanded to the Court of Appeals at 139 Wn.2d 1008 (1999).

---

[6]Detective Pfitzer testified about the surveillance tape and a photograph obtained from it and identified a "black colored object that could be a knife" in Rivera's hand.