# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68269-5-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| DAVID S. SOLOMONA, | ) ) | |
| Appellant, | ) ) | |
| and | ) ) | UNPUBLISHED OPINION |
| MARY BETH BREER, NATHANIEL LAUIFI, and DOMINIQUE RENEE HERRON, and each of them, | ) ) ) | FILED: April 29, 2013 |
| Defendants. | ) ) ) | |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 APR 29 PM 1:07

BECKER, J. — A jury found David Solomona guilty of first degree robbery, unlawful possession of a firearm, witness tampering, and delivery of methamphetamine. We conclude that the trial court did not err in admitting evidence of Solomona's prior assault conviction and that the State ensured jury unanimity by electing the incident that constituted the witness tampering charge. The arguments in Solomona's statement of additional grounds for review are also without merit. We affirm.

In December 2010, Michael Burns permitted David Solomona, a recent acquaintance, to move into his Maple Valley house. At Burns's request, Solomona agreed not to bring any firearms onto the property or into the house. Cassandra Nuezca, Solomona's girl friend, also stayed in the house and regularly smoked methamphetamine with Solomona.

One night, Burns was awakened by a "loud boom." He ran downstairs and discovered Solomona on the deck holding a camouflage shotgun with a pistol grip. Solomona explained that he had seen someone outside and had fired a warning shot into the air. Burns told Solomona to leave immediately, and Solomona complied. Solomona and Nuezca returned the following morning, and Burns allowed them to stay several more days.

On January 8, 2011, Solomona called Burns, apologized for his conduct, and arranged a time to pick up the rest of his possessions. Just before the arranged time, Solomona called and said that his cousin and two other people would be stopping by to help. Solomona told Burns that he would be there in five or ten minutes.

A short time later, two men and a woman arrived at Burns's house. Burns let them in and waited for Solomona to arrive. When Solomona did not appear, Burns helped one of the men carry a mattress. The man then pointed a handgun at Burns's head and threatened to kill him. Burns bolted towards the open front door, but the woman closed it before he could escape.

The two men then tackled Burns and beat him on the head with the gun. One of the men kicked Burns in the face, rendering him briefly unconscious.

When Burns awoke, he saw the individuals removing his two large-screen televisions.

Sometime before the robbery, Solomona told Nuezca that he was planning to steal Burns's televisions so he could pay back the $400 that he owed her. On the day of the robbery, Solomona called Nuezca and said that "the people that are going to help me get your money" were "almost here." Solomona later told Nuezca that he had discarded a handgun because it might have his fingerprints and Burns's blood on it. Nuezca helped Solomona look for the gun, but they could not find it. Nuezca later showed the area to the police, who recovered the handgun.

On the day of the robbery, Solomona asked his friend Gregory Potter to help him with the move. Solomona and Potter drove around for awhile, stopped for something to eat, and then returned to Potter's house. Two men and a woman stopped by and carried a television set into Potter's house. Initially, Potter believed the television belonged to Solomona.

After his arrest, Solomona placed a series of telephone calls from jail. Solomona called Potter and told him to tell the police that the television was "from the street." Solomona repeatedly called Nuezca and told her to "keep your fucking mouth shut" and not to talk to anybody about the robbery. Solomona's calls were recorded and played at trial.

The State charged Solomona with one count of robbery in the first degree while armed with a firearm, two counts of unlawful possession of a firearm in the first degree, one count of tampering with a witness, and one count of delivery of

methamphetamine. The jury found him guilty as charged, and the court imposed a standard range sentence.

### Prior Assault Conviction

Solomona contends that the trial court erred in admitting evidence of his prior conviction for second degree assault, which constituted an element of the unlawful possession of a firearm charge. He claims that defense counsel offered to stipulate to admission of the conviction as an unnamed "serious offense" and that the deputy prosecutor refused to accept that offer.

When a prior conviction constitutes an element of the current offense, a defendant may not stipulate to the existence of the element in order to remove it completely from the jury's consideration. State v. Gladden, 116 Wn. App. 561, 566, 66 P.3d 1095 (2003). But if the defendant offers to stipulate to an unnamed prior conviction, the trial court violates ER 403 by not accepting the stipulation. Old Chief v. United States, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); see also State v. Johnson, 90 Wn. App. 54, 950 P.2d 981 (1981) (trial court erred in admitting prior rape conviction in prosecution for unlawful possession of a firearm).

In order to prove unlawful possession of a firearm in the first degree, the State had to establish that Solomona owned or possessed a firearm "after having previously been convicted . . . of any serious offense as defined in this chapter." RCW 9.41.040(1)(a). Solomona's prior conviction for second degree assault was a "serious offense" as defined in RCW 9.41.010(16)(a) and (3)(a).

Prior to trial, the deputy prosecutor informed the trial court that he been discussing "a stipulation" with defense counsel and that he had not yet decided "whether I'm willing to do the stipulation to that or not at this time." Although the parties continued to discuss the precise format in which to present the information to the jury, defense counsel expressly noted that he had no objection when the State sought admission of a certified copy of the assault judgment and sentence. And defense counsel later agreed to submit a highly redacted copy of the judgment and sentence to the jury.

Contrary to Solomona's assertions, nothing in the record supports his claim that defense counsel sought to stipulate to an *unnamed* conviction. On the record before us, we must presume that defense counsel made a reasonable tactical decision to identify the prior conviction associated with the firearm counts, rather than risk jury speculation that the unnamed "serious offense" involved an even more violent crime. See State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (strong presumption that defense counsel's performance reasonable). Solomona has failed to demonstrate that the trial court erred in admitting evidence of his prior assault conviction.

## Jury Unanimity

Solomona contends that the trial court violated his right to a unanimous jury when it failed to give a unanimity instruction on the witness tampering charge. He argues that both the telephone call to Gregory Potter and the calls to Cassandra Nuezca could have formed the basis for the conviction.

Criminal defendants in Washington have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of several acts that could constitute the crime charged, the jury must unanimously agree on which act constituted the crime. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). To ensure jury unanimity, "the State must tell the jury which act to rely on in its deliberations or the [trial] court must instruct the jury to agree on a specific criminal act." Kitchen, 110 Wn.2d at 409; see also State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). "When the State fails to make a proper election and the trial court fails to instruct the jury on unanimity, there is constitutional error." Kitchen, 110 Wn.2d at 411.

The State does not dispute that both Solomona's recorded call to Gregory Potter, asking him to tell the police that the television was "from the street," and the multiple calls to Cassandra Nuezca could have supported the conviction for witness tampering. We agree with the State, however, that the deputy prosecutor elected the calls to Nuezca as the basis for the charge during closing argument.

The deputy prosecutor devoted only a single, brief section of closing argument to the witness tampering charge. After referring to the elements of the offense, he commented that "the best thing is in this particular offense, it's just the defendant who speaks for himself." The deputy prosecutor then played some of the recorded calls that Solomona placed to Nuezca from jail. After playing the

recording, the deputy prosecutor quoted the key phrases from the recording:

> "I want you to shut the fuck up and not say anything to anybody." "I want you not to go to court." "Promise that you won't say anything else." So guilty of tampering with a witness.

He then concluded the argument with "*The defendant said it all.*"[1]

The deputy prosecutor included no reference to Potter during the closing argument on witness tampering. He had already played the recording of the call to Potter much earlier during closing argument and urged the jury to consider it as evidence that Solomona had participated in the robbery. Both before and after playing the recording of the calls to Nuezca, the deputy prosecutor focused the jury's attention exclusively on the words that Solomona used during those calls. He also repeated the key phrases that Solomona had used and concluded that the "defendant said it all." Given the State's express reliance on the call to Potter as evidence of Solomona's participation in the robbery, the exclusive references to Solomona's calls to Nuezca during the argument on witness tampering, and the repeated assertions that Solomona's words during those specific calls proved witness tampering, the State effectively elected the calls to Nuezca as the basis for the witness tampering charge. The State did not violate Solomona's right to a unanimous jury.

## Statement of Additional Grounds for Review

In his statement of additional grounds for review, Solomona contends that the evidence was insufficient to support his conviction for two counts of unlawful possession of a firearm in the first degree. But the jury heard evidence that

---

[1] (Emphasis added.)

-7-

Solomona admitted disposing of the handgun after the robbery. Michael Burns testified that he repeatedly saw Solomona holding the shotgun. Viewed in the light most favorable to the State, the evidence clearly established that Solomona possessed or controlled both firearms. See RCW 9.41.040(1)(a).

Solomona's challenge to the sufficiency of the evidence to establish unlawful delivery of methamphetamine is equally meritless. Nuezca testified that Solomona repeatedly provided her with methamphetamine.

Solomona contends that the deputy prosecutor committed misconduct by continuing to question Dominique Herron after Herron exercised his Fifth Amendment right to remain silent. But Herron had previously pleaded guilty to charges arising out of his participation in the robbery. He therefore had no privilege to refuse to answer the questions, and the trial court properly found him in contempt. Solomona has failed to demonstrate any misconduct.

Solomona claims that he was denied his right to effective assistance of counsel because of a conflict and breakdown in communication. But because these allegations rest on matters that are outside the record, they cannot be considered on direct appeal. State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Finally, Solomona contends that the trial court violated his CrR 3.3 speedy trial rights because he never signed a continuance. But CrR 3.3 does not require the defendant's agreement for every continuance. See CrR 3.3(f)(2). Because Solomona has failed to identify "the nature and occurrence of [the] alleged errors," we will not consider them. RAP 10.10(c).

Affirmed.

Becker, J.

WE CONCUR:

Leach, C. J.

Cox, J.