IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35172-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| BRENDAN REIDY TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — *Old Chief v. United States*, 519 U.S. 172, 191-92, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) holds that where the existence of a prior conviction is an element of an offense, the trial court must accept the accused's offer to stipulate to the prior conviction. This appeal requires us to determine whether this rule extends to an accused's offer to stipulate to a postconviction no-contact order. We hold that it does. We, therefore, reverse Brendan Taylor's conviction for felony violation of a no-contact order and remand for retrial.

FACTS

A no-contact order prohibited Brendan Taylor from being within 1,000 feet of Anna Kelly. But they decided to live together nevertheless.

On Christmas Day of 2016, their landlord drove past their residence and saw Kelly using a snow shovel "like a hatchet" against the windshield of Taylor's car. Report of Proceedings (RP) at 140. The landlord called 911.

When the police arrived, Taylor was gone. Kelly claimed that Taylor had assaulted her. At the time, Taylor was under supervision by the Department of Corrections for a prior offense.

The State charged Taylor with several crimes, including the two crimes that are at issue on appeal: felony violation of a no-contact order and escape from community custody.[1]

PROCEDURE

The day prior to trial, Taylor chose to plead guilty to some of the charges, including escape from community custody. At the plea hearing, he presented a written statement that provided the factual basis for his plea. The statement reads in part:

> On or about December 27, 2017 [sic[2]], I did willfully discontinue making myself available to the Department of Corrections for supervision, by making my whereabouts unknown or by failing to maintain contact with the Department as directed by the Community Corrections Office.

[1] The State also charged Taylor with second degree assault (strangulation) and first degree burglary. The State later charged Taylor with two counts of misdemeanor violation of a no-contact order based on calls he made to Kelly while incarcerated. For various reasons, these charges are not before us on appeal.

[2] The statement erroneously states the year as 2017 instead of 2016.

2

Clerk's Papers (CP) at 19.  Taylor signed the statement, attesting to its accuracy.  When

asked by the trial court if the statement was true, Taylor responded,

> I was out of gas in Oregon.  But it's—Yeah, it's basically true. . . .  I was
> making my way to get back up here . . . .
>     . . . .
> . . . I was on the phone with [my community corrections officer] and then
> he had left a message that I wasn't going to be able to make an
> appointment, but it's still—it's still the same as—as missing out on—on
> that.

RP at 7-8.

On the morning of trial, Taylor asked that the no-contact order be excluded in light

of his stipulation that he knew of its existence.  The State responded that it planned on

admitting two no-contact orders.  The following discussion occurred:

> THE COURT:  . . .  [S]ometimes . . . we'll have a case where there's
> a charge of felon in possession of a firearm,—
>     . . . .
> THE COURT:  One of the things the state would have to prove is the
> underlying felony conviction.  Often-times the defense will stipulate to that
> in an effort to avoid the prejudice of having the specific named felony
> brought into the mix.  And I think that's been approved pretty regularly as
> [an] appropriate thing to do.
>     . . . .
> [THE DEFENSE]:  Right.
> [THE STATE]:  And the law actually requires two [elements].  The
> state's—state's not willing to accept the stipulation; we'd like to use the
> order, both of them.  But there's two elements the state has to prove;
> number one that there existed a no-contact order, number two that the
> defendant knew about it.
>     . . . .

3

> [THE COURT]: . . . [Y]ou're saying that the defendant Mr. Taylor
> is willing to stipulate to both of those things.
> [THE DEFENSE]: Yes.

RP at 20-21.

After a short recess, the trial court denied Taylor's request to accept his stipulation in lieu of the no-contact order.

At trial, and over Taylor's ER 403 objection, the trial court admitted the no-contact order. The defense asked to review the order, but the court noted, "I don't see anything on here that's objectionable." RP at 183.

The no-contact order was signed by the same judge who presided over the trial. It is entitled a "Domestic Violence No-Contact Order," and is marked "Post Conviction." Plaintiff's Ex. 35 at 1. The trial court's findings of fact are also part of the order. Finding of fact 5 states:

> Based upon the record both written and oral, the court finds that the
> defendant has been charged with, arrested for, or convicted of a domestic
> violence offense, that the defendant represents a credible threat to the
> physical safety of [Kelly], and the court issues this Domestic Violence No-
> Contact Order . . . to prevent possible recurrence of violence.

Plaintiff's Ex. 35 at 2. The date of the order is less than one week before the alleged assault for which Taylor was being tried.

4

After all of the evidence was presented, the jury convicted Taylor of felony

violation of a no-contact order.  The trial court sentenced Taylor to five years of

imprisonment and one year of community custody.  Taylor timely appealed.

ANALYSIS

A.    ADMISSION OF NO-CONTACT ORDER

Taylor contends that the trial court abused its discretion when it denied his

stipulation and admitted the no-contact order.  Taylor argues that the rule established in

*Old Chief*—and adopted by this court in *State v. Johnson*, 90 Wn. App. 54, 63, 950 P.2d

981 (1998)—applies equally here.  That rule requires the trial court to accept the

accused's offer to stipulate to his felony status and exclude documentary proof when the

accused's felony status is an element of the offense charged.

The State contends that stipulating to a no-contact order is not the same as

stipulating to a prior felony.  For the reasons explained below, we disagree.  We hold that

the trial court abused its discretion under ER 403 when it refused to accept Taylor's

offered stipulation and then admitted the postconviction no-contact order.

Whether a trial court properly applied ER 403 is reviewed for abuse of discretion.

*Johnson*, 90 Wn. App. at 62.  A trial court abuses its discretion when its decision is

"'manifestly unreasonable, or exercised on untenable grounds, or for untenable

5

reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Evidence is unfairly prejudicial if it is "likely to provoke an emotional response rather than a rational decision." *Johnson*, 90 Wn. App. at 62. "The availability of other means of proof is a factor in deciding whether to exclude prejudicial evidence." *Id*. Where the existence of a prior conviction is an element of an offense, the court must accept the accused's offer to stipulate to the prior conviction. *Old Chief*, 519 U.S. at 191-92; *Johnson*, 90 Wn. App. at 63.[3]

While the courts in *Old Chief* and *Johnson* recognized the general rule that the prosecution may choose how to present the State's evidence in an attempt to prove guilt, both courts noted that this rule has "'virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.'" *Johnson*, 90 Wn. App. at 62-63 (quoting *Old Chief*, 519 U.S. at 190).

---

[3] *Old Chief* analyzes FEDERAL RULE OF EVIDENCE 403, but its reasoning and holding were explicitly adopted and applied to Washington's ER 403 in *Johnson*, 90 Wn. App. at 62-63.

The *Old Chief* Court explained:

> Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach.

519 U.S. at 191. Hence, the State does not suffer any prejudice when some extant legal status of the accused is proved by stipulation rather than by the admission of court documents.

Indeed, the functional difference between the value of a stipulation to the existence of a prior conviction and of a court record naming the offense is "'distinguishable only by the risk [of unfair prejudice] inherent in one and wholly absent from the other.'" *Johnson*, 90 Wn. App. at 63 (quoting *Old Chief*, 519 U.S. at 191). Evidence containing the crime of a prior conviction is inherently prejudicial because of the risk that the jury will "generaliz[e] a defendant's earlier bad act into bad character" or "worse, . . . call[ ] for preventative conviction even if [the accused] should happen to be innocent momentarily." *Old Chief*, 519 U.S. at 180-81. This risk is particularly high when the prior conviction is for an offense similar to the one for which the accused is currently on trial. *Id.* at 185.

Whether the *Old Chief* doctrine applies with equal effect to postconviction no-contact orders is an issue of first impression. For the reasons set forth below, we hold that the rationale of *Old Chief* applies to postconviction no-contact orders.

First, similar to a prior conviction, the existence of a postconviction no-contact order is dependent on a judgment rendered independent of the subsequent charges against the defendant. As with offenses where a prior conviction is an element of the crime—in the present case—the defendant's legal status is at issue. *Old Chief* held that if the justification for admitting the evidence was to prove some issue other than legal status—such as motive, opportunity, intent, or knowledge—the opposing party could seek the admission of the conviction. Here, Taylor offered to stipulate that the order was an existing order, and he knew of it. The State fails to explain how the order has any relevance beyond that to which Taylor offered to stipulate.

Once the defendant stipulates to the existence of, and his knowledge of, the no-contact order, the order itself has no additional probative value. The difference between proof by stipulation and proof by admitting the order is only that the latter will carry a risk of unfair prejudice to the defendant. No-contact orders generally contain prior charges, convictions, and allegations that the defendant acted violently against the victim. They

8

also often include other language that makes the accused appear particularly dangerous or violent.

All of these considerations are present here. The no-contact order contained the phrase, "Post Conviction." Plaintiff's Ex. 35 at 1. It told the jury that Taylor had been found guilty of assaulting Kelly not long before the charged felony assault. It further told the jury that Taylor "represents a credible threat to the physical safety of [Kelly]." Plaintiff's Ex. 35 at 2. The threat was sufficient that the order required Taylor to immediately surrender all firearms and other dangerous weapons.

Here, there was no additional probative value to the no-contact order beyond Taylor's offered stipulation. But the risk of unfair prejudice was substantial. In light of Taylor's offered stipulation, the risk of unfair prejudice from admitting the no-contact order substantially outweighed its probative value. We conclude that the trial court abused its discretion when it admitted the no-contact order and refused to accept Taylor's stipulation.

The State does not argue that the error, if any, was harmless. We therefore reverse Taylor's conviction for felony violation of a no-contact order and remand for retrial.[4]

B.      ACCEPTANCE OF GUILTY PLEA TO ESCAPE FROM COMMUNITY CUSTODY

Taylor argues that the trial court violated his due process rights when it accepted his guilty plea to escape from community custody. He contends that the record establishes that his plea was not knowing, voluntary, and intelligent. As a preliminary matter, the State asserts that Taylor may not raise this issue for the first time on appeal. We disagree.

RAP 2.5(a)(3) provides that "manifest error affecting a constitutional right" may be raised for the first time on appeal. We first consider whether the issue raised affects a constitutional right. A defendant gives up constitutional rights by agreeing to plead guilty and, because fundamental rights of the accused are at issue, due process considerations come into play. *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). Due process requires that a guilty plea be knowing, voluntary, and intelligent. *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). A guilty plea is not knowing, voluntary, and intelligent when the defendant does not understand the nature of the charge. *State v.*

---

[4] In light of our disposition, Taylor's claims that he received ineffective assistance of counsel and that his five-year sentence is unlawful are moot.

10

*R.L.D.*, 132 Wn. App. 699, 705-06, 133 P.3d 505 (2006).  We conclude that the error

raised by Taylor affects a constitutional right.

We next consider whether the error is manifest.  An error is manifest if it has

"practical and identifiable consequences in the trial of the case."  *State v. Stein*, 144

Wn.2d 236, 240, 27 P.3d 184 (2001).  Manifest error is also described as error that is

"'unmistakable, evident or indisputable.'"  *State v. Burke*, 163 Wn.2d 204, 224, 181 P.3d

1 (2008) (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).  When a

defendant at the plea hearing denies an element of the charged crime, accepting the plea

has identifiable consequences and is evident error.

Because the issue raised by Taylor involves a manifest error affecting a

constitutional right, he may raise it for the first time on appeal.

We next consider whether Taylor's guilty plea was knowing, voluntary, and

intelligent.  The crime of escape from community custody occurs when a person

> *willfully* discontinues making himself . . . available to the [Department of
> Corrections] for supervision by making his . . . whereabouts unknown or by
> failing to maintain contact with the department as directed by the
> community corrections officer . . . .

RCW 72.09.310 (emphasis added).

Taylor provided the trial court with a signed statement in which he admitted to the

prohibited conduct.  But when questioned by the court, his oral statements contradicted

11

his written statement. Specifically, he seems to claim that he did not *willfully* commit the offense because his car ran out of gas so he missed a scheduled appointment. At this point, it was incumbent on the trial court to ask further questions to determine whether Taylor actually understood the elements of the crime and was admitting to the prohibited conduct. *See R.L.D.*, 132 Wn. App. at 705-06. Yet, the trial court did not question Taylor further.

Taylor both admits and denies the prohibited conduct. From Taylor's conflicting statements, the trial court erred by not confirming that his guilty plea was knowing, voluntary, and intelligent. The court should have questioned Taylor further to clarify the ambiguity. We, therefore, remand for the trial court to question Taylor further.

If Taylor admits to the prohibited conduct, his prior guilty plea is valid. However, if Taylor denies the prohibited conduct, we direct the trial court to vacate the guilty plea and to modify the corresponding judgment and sentence to reflect only those counts to which Taylor knowingly, voluntarily, and intelligently pleaded guilty.

No. 35172-6-III
*State v. Taylor*

Reversed and remanded with instructions to conduct a new plea hearing and new trial.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Fearing, J.

13