IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77921-4-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BENJAMIN BRADLEY CHAMBERS, | |
| Appellant. | FILED: June 10, 2019 |

ANDRUS, J. — Benjamin Chambers appeals his conviction and sentence for one count of possession of a controlled substance and one count of violating a domestic violence court order. Chambers argues the trial court erred in denying his motion for a mistrial after a police officer testified he identified Chambers from a jail booking photograph. Chambers also contends counsel was ineffective in failing to stipulate to the existence of the no-contact order or request redaction, and that cumulative error requires reversal. But Chambers has not made the requisite showing of prejudice to warrant a new trial. We affirm.

FACTS

On September 30, 2017, while on patrol in north Everett, police officers observed a man and a woman walking towards a Volkswagen Passat. A routine license plate check revealed a recent domestic assault incident involving that vehicle, a man named Benjamin Chambers, and a woman named Tara Miller. The

1

records also indicated that a no-contact order existed protecting Miller from Chambers, and that both had outstanding warrants.

Police stopped the vehicle and informed Chambers that he was under arrest on an active warrant. Chambers turned towards Miller and said "What's going on? Did you do this?" Chambers told police he knew about the no-contact order, but claimed he did not know it restrained him from speaking with Miller.

Officers handcuffed Chambers and walked him back to the patrol car to conduct a search incident to arrest. Chambers was wearing a fleece North Face jacket that appeared to fit him. As police were about to commence the search, Chambers spontaneously stated that the jacket was not his. He claimed Miller gave it to him about 20 minutes prior to the stop, and that he did not know what was in the pockets. In the left front pocket of the jacket, officers found a clear plastic baggie containing numerous other small baggies bearing a printed alien head logo. Officers also found another baggie with the same logo in Chambers' left pants pocket. In the right pocket of the jacket, police located two small plastic bindles containing substances later determined to be heroin and methamphetamine.

The State charged Chambers with two counts of possession of a controlled substance and one count of violating a domestic violence court order. During motions in limine, the State moved to admit a certified copy of the domestic violence no-contact order. Defense counsel objected to admission of the order on grounds not at issue in this appeal. The court admitted the no-contact order into evidence. Defense counsel subsequently moved for an order precluding the State

from referencing prior convictions. The court granted the motion with the exception of the admitted no-contact order, noting that it contained a "post-conviction" notation. Defense counsel stated that he did not object to that language, given that the no-contact order did not include details regarding the nature of the underlying conviction. Defense counsel also indicated he would not object to limited testimony that the records check revealed a warrant for Chambers' arrest, provided that witnesses avoid specifying details regarding the warrant.

At trial, Officer Oleg Kravchun testified that the license plate check showed the vehicle had been involved in an incident in Marysville:

> The first person that I saw was a Benjamin Chambers that was involved in the incident, and the second was a Tara Miller. Kind of matched it was a female and a male walking to the car.

> I did a records check of Mr. Chambers, saw that he had an active warrant. And also saw that he had a no-contact order that was issued out of Marysville with Tara Miller. I pulled up a – as soon as you click up on the name pretty much it shows a jail booking photo of Mr. Chambers --

Defense counsel moved to strike Officer Kravchun's reference to Chambers' jail booking photograph, arguing that it violated the court's order not to reference prior convictions. The court ruled that the statement did not violate the order, but agreed that the jail booking photograph should not be mentioned again. Defense counsel moved for a mistrial. The court denied the motion:

> Okay. Again, because there was no specific motion to preclude that which is clearly written in Officer Kravchun's report, I did rule that and I believe by agreement that prior bad acts of the defendant would not be admitted, prior criminal conduct would not be admitted, that that evidence that there was a warrant would be admitted. So I'm not going to find an intentional violation -- or a violation, but certainly not intentional.

3

I am going to instruct that henceforth there is now a court order that there shall be no mention of jail booking photographs as to the defendant. . . . They should just be referred to as photographs of the defendant. And, again, because of the fact that the warrant was agreed -- it was agreed that that would be mentioned, the fact that there was a booking photograph at some point I do not find so prejudicial as to warrant a mistrial. I think that any prejudice can be cured by instructing the jury to disregard that and not consider it evidence.

The trial court instructed members of the jury to disregard testimony that any photograph viewed by Officer Kravchun may have been a booking photograph, "as where that photo came from is not relevant in any way to any decision you need to make or relevant to this case."

Chambers asserted a defense of unwitting possession to the controlled substance charges. He did not testify or call any witnesses at trial. The jury found Chambers guilty as charged.[1]

ANALYSIS

1. Motion for Mistrial

Chambers asserts the trial court erred in denying his motion for a mistrial after Officer Kravchun referred to his jail booking photograph. We review a trial court's decision to deny a motion for mistrial for abuse of discretion. State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015). A trial court abuses its discretion only when the decision is manifestly unreasonable or based on untenable grounds. State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006).

---

[1] The court subsequently dismissed the second possession charge under the merger doctrine.

4

"Courts look to three factors to determine whether a trial irregularity warrants a new trial: '(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction.' " State v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011) (quoting State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992)). "Application of these factors requires a balancing approach; they cannot be viewed in isolation from each other." State v. Garcia, 177 Wn. App. 769, 783, 313 P.3d 422 (2013). We consider these factors with deference to the trial court. Perez-Valdez, 174 Wn.2d at 818.

"A defendant is entitled to a fair trial but not a perfect one." State v. Davis, 175 Wn.2d 287, 345, 290 P.3d 43 (2012) (quoting Brown v. United States, 411 U.S. 223, 231, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973). Thus, the "court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). "The trial court is in the best position to determine if a trial irregularity caused prejudice." State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015).

Statements introducing irrelevant evidence that a defendant previously committed a similar crime are typically considered serious irregularities. State v. Escalona, 49 Wn. App. 251, 255, 742 P.2d 190 (1987) (witness testified defendant had a criminal record and stabbed someone); State v. Young, 129 Wn. App. 468, 474-75, 119 P.3d 870 (2005) (trial court disclosed defendant's prior conviction for second degree assault). In contrast, a single inadvertent reference to an

individual's past incarceration may not be sufficiently serious to warrant a mistrial. State v. Condon, 72 Wn. App. 638, 648-49, 865 P.2d 521 (1993) (witness testified defendant called her "when he was getting out of jail"); State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (witness stated victim had known defendant "three years before he went to the penitentiary the last time").

Chambers argues a new trial is required because Officer Kravchun's reference to jail booking photographs improperly invited the jury to convict based on criminal propensity. He contends the prejudicial impact was exacerbated by the "post-conviction" notation on the no-contact order, making it clear to the jury that he was previously convicted of a crime.

We conclude that this trial irregularity was not sufficiently serious to require a new trial. The jury heard no specific information about the nature of the charge, the type of offense, or any other details regarding Chambers' criminal history. Moreover, the jury had already heard testimony that Chambers had an active warrant, was recently involved in an incident with Miller, and was the restrained party of a no-contact order protecting her. The existence of a jail booking photograph added little or nothing to the prejudicial effect of this unchallenged evidence. In this context, the testimony was not so serious that the trial court's instruction could not cure any resulting prejudice. We presume that juries follow a trial court's curative instructions. Perez-Valdez, 172 Wn.2d at 818-19.

Chambers asserts that State v. Henderson, 100 Wn. App. 794, 998 P.2d 907 (2000) supports the conclusion that the jail booking photograph reference was a serious irregularity warranting a new trial. But that case is distinguishable. In

6

Henderson, the prosecutor asked a police officer whether a photo montage that included the defendant was "put together with photographs that were already on hand." Henderson, 100 Wn. App. at 803. The defendant did not object, and the court gave no limiting instruction. Henderson, 100 Wn. App. at 803. During closing argument, the prosecutor again indicated that the sheriff's department had a photograph of the defendant "on hand." Henderson, 100 Wn. App. at 803. The court held that the cumulative prejudicial impact of this and three other instances of prosecutorial misconduct warranted a new trial. Henderson, 100 Wn. App. at 804-05. Here, unlike in Henderson, the trial court promptly instructed the jury to disregard the improper reference, and it did not come up again during the rest of the trial. And the Henderson court remanded for a new trial on the basis of cumulative error resulting from multiple instances of prosecutorial misconduct, whereas Chambers' case involves a single trial irregularity arising from witness testimony.

The trial court's curative instruction sufficed to address any prejudice arising from this trial irregularity. The trial court did not abuse its discretion in denying Chambers' motion for a mistrial.

2. Ineffective Assistance of Counsel

Chambers contends that he received ineffective assistance of counsel because his attorney did not seek a stipulation to the existence of the no-contact order or, alternatively, move to redact the "post-conviction" notation. A claim of ineffective assistance of counsel presents a mixed question of fact and law which we review de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

7

To establish a claim of ineffective assistance of counsel, a defendant must establish (1) that his attorney's representation fell below an objective standard of reasonableness and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995). If a defendant fails to establish either element, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). There is a strong presumption of effective representation of counsel. In re the Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). To rebut this presumption, the defendant has the burden to establish that there are no legitimate strategic or tactical reasons for the conduct. McFarland, 127 Wn.2d at 335-36.

Chambers asserts that reasonable counsel would have proposed a stipulation to the existence of the no-contact order or redaction of the "post conviction" reference. He contends that counsel's deficient performance likely affected the outcome of the trial.

We agree with Chambers that the trial court would likely have accepted a proposed stipulation or ordered a proposed redaction of the no-contact order. See State v. Taylor, 4 Wn. App.2d 381, 388-89, 421 P.3d 983 (2018) (trial court abused its discretion when it admitted defendant's no-contact order and denied his offer to stipulate). However, we need not consider whether counsel's representation was deficient because the record does not support Chambers' contention of prejudice.

The prejudicial effect of the no-contact order must be viewed in the context of the evidence. Here, as previously discussed, Chambers agreed that evidence

of his outstanding warrant, the recent prior incident with Miller, and the existence of the no-contact order was admissible. Furthermore, overwhelming evidence supported Chambers' conviction on both charges. The unrefuted evidence demonstrated that Chambers was present at the scene with Miller in violation of the no-contact order and that he possessed controlled substances in his jacket pocket. Although Chambers asserted an unwitting possession defense, he did not call any witnesses or testify. The jacket he was wearing appeared to fit him, and it contained plastic baggies that matched those found in his pants pocket. In light of this evidence, there was no reasonable probability that the no-contact order affected the jury's verdict.

Chambers asserts that the jury was likely to convict him because the no-contact order introduced prejudicial evidence of criminal propensity. But the cases he relies upon are distinguishable because they involved evidence of the defendant's prior similar crimes. State v. Bacotgarcia, 59 Wn. App. 815, 822, 801 P.2d 993 (1990) (promoting prostitution); Escalona, 49 Wn. App. at 255-56 (testimony that defendant previously stabbed someone); State v. Mack, 80 Wn.2d 19, 24, 490 P.2d 1303 (1971) (armed robbery). Here, in contrast, the no-contact order did not specify any details of the underlying conviction.

Chambers has not shown that the no-contact order likely affected the outcome of the trial. His ineffective assistance of counsel claim fails.

3. Cumulative Error

Chambers contends that the cumulative effect of the booking photograph reference and the "post-conviction" language in the no-contact order deprived him

9

of a fair trial. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). "Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless." State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). As discussed above, Chambers has not shown that the challenged statements affected the outcome of his trial. He has not demonstrated prejudicial error.

Affirmed.

WE CONCUR:

_Andrus, J._