## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34677-3-III |
| Respondent, | ) | |
| | ) | ORDER: (1) GRANTING |
| v. | ) | MOTION TO PUBLISH AND |
| | ) | (2) WITHDRAWING OPINION |
| SHALIN E. ALLTUS, | ) | FILED JULY 3, 2019 |
| | ) | |
| Appellant. | ) | |

THE COURT has considered the appellant's motion to publish a portion of our July 3, 2019, opinion; and the record and file herein.

IT IS ORDERED that the motion to publish is granted.

IT IS FURTHER ORDERED that the court's July 3, 2019, opinion is withdrawn and a new opinion is filed herewith.

PANEL: Judges Siddoway, Fearing and Lawrence-Berrey

FOR THE COURT:

_____
ROBERT LAWRENCE-BERREY
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34677-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION PUBLISHED IN PART |
| SHALIN E. ALLTUS, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Shalin Alltus appeals her convictions and sentence for the 2014 premeditated murder of her uncle and related crimes, committed when she was 16 years old. We affirm the convictions but in the published portion of the opinion hold that the trial court abused its discretion when it denied Ms. Altus's request to bifurcate her sentencing, order a presentence report, and afford her lawyers sufficient time to present evidence of mitigating circumstances related to her youth. We remand with directions to order a presentence report and conduct a new sentencing hearing.

BACKGROUND FACTS

On October 5, 2014, Patrick Alltus was found dead in his Riverside, Washington, home. He was found wrapped in blankets with a plastic bag over his head. He had gunshot wounds and a blunt force injury to his forehead. A bullet had passed through his right wrist and re-entered his right bicep. From the angle of the wounds, his arm had to be bent at the elbow at the time he was shot. He had been shot in the face with a shotgun, with the pellets and wadding entering his jaw, breaking teeth, lacerating the left internal carotid artery and jugular vein, and striking his vertebrae.

The cause of death was determined to be bleeding out, probably within 30 minutes of the shotgun blast. The bullet that struck him in the wrist and bicep was consistent with a .22 caliber rifle and the pellets and wadding in his face were consistent with a .410 shotgun.

The last time anyone had heard from Mr. Alltus was late on September 30, 2014, when his girlfriend had received a text message. Although Mr. Alltus's 16-year-old niece Shalin Alltus and another teen, Parker Bachtold, had been living with Mr. Alltus, no one else was on the property when his body was found. One of Patrick Alltus's pickup trucks was missing. Law enforcement issued a statewide alert for the missing truck and listed Ms. Alltus and Mr. Bachtold as potential suspects.

On October 6, 2014, Ms. Alltus and Mr. Bachtold were arrested at a motel in Oregon, where Mr. Bachtold's father and stepmother had been staying. Mr. Alltus's

missing truck was located at the motel and his .22 rifle and .410 shotgun were found in Mr. Bachtold's parents' motel room.

Mr. Bachtold and Ms. Alltus were both questioned by police. Although both originally denied any knowledge of Patrick Alltus's death, Mr. Bachtold eventually admitted to his role in the shooting.

According to Mr. Bachtold, he was sleeping in a bedroom on the night Mr. Alltus was shot. Around midnight, he was awakened by a gunshot. He picked up the .410 shotgun that was in the room, loaded it, and stepped into the hallway. Looking down the hallway, Mr. Bachtold saw Ms. Alltus in the living room, behind a couch. Patrick Alltus's .22 rifle was on the ground. Mr. Alltus was coming around the side of the couch, angrily saying something to the effect, "Fuck," "God damn it," "you shot me." 2 Report of Proceedings (2 RP) at 345.[1] There was blood on his head and blood running down his hand. As Mr. Alltus approached Ms. Alltus, Mr. Bachtold shot him in the head with the .410 shotgun.

---

[1] We cite in this opinion to three of seven volumes of reported proceedings. The three volumes cited are not consecutively paginated. We cite the volume that contains voir dire and other proceedings taking place on August 23 and 24, 2016, as "1 RP." We cite the volume that contains trial proceedings taking place beginning on August 25, 2016, and continuing through closing argument as "2 RP." We cite the volume that contains some pretrial proceedings, the jury's verdict, and the sentencing hearing as "3 RP."

After shooting Mr. Alltus, Mr. Bachtold claims he covered his body with a blanket and Ms. Alltus placed a plastic bag over his head. Ms. Alltus and Mr. Bachtold then grabbed a few items from the home, including the shotgun and rifle, and fled in Mr. Alltus's truck. They drove to Curtin, Oregon, where Mr. Bachtold knew his father and stepmother were staying at the time. He was aware that they had purchased a store there, and would be remodeling it.

Mr. Bachtold and Ms. Alltus had arrived in the Curtin area when the truck ran out of gas near the store being purchased by the Bachtold parents. Mr. Bachtold was trying to push the car when an Oregon state trooper stopped and questioned him and Ms. Alltus. The trooper asked for their names, and both Ms. Alltus and Mr. Bachtold provided false identities. When asked by the trooper for identification, Ms. Alltus told him she did not have identification with her, which was false. The trooper was called away to another incident and after he left, Mr. Bachtold put the .410 shotgun and .22 rifle in the store building.

The next morning, Mr. Bachtold and Ms. Alltus met up with Mr. Bachtold's father and stepmother at the motel where the parents were staying. Mr. Bachtold's stepmother asked him whose truck he was driving and where all the items in his possession came from. Mr. Bachtold answered that he had been working for Ms. Alltus's uncle and had earned them, which Ms. Alltus affirmed.

4

Mr. Bachtold's parents rented a second motel room for Mr. Bachtold and Ms. Alltus, where they stayed until the teens were located by police and taken into custody shortly thereafter, on October 6. During their stay, Mr. Bachtold spent a substantial amount of time working with his father at the store, leaving Ms. Alltus behind at the motel.

A few days into their stay, Mr. Bachtold showed his father the two guns taken from Mr. Alltus's home. The senior Mr. Bachtold took them and stored them in his motel room, where they were later recovered by police. The senior Mr. Bachtold explained that he took the guns because he disapproved of his son having them in his possession.

Ms. Alltus was eventually charged, as a principal or an accomplice, with first degree aggravated murder, first degree robbery, theft of a motor vehicle, and two counts of theft of a firearm. Being a juvenile, she was also charged with two counts of second degree unlawful possession of a firearm by a juvenile.

During the five-day jury trial, witnesses testified to the discovery of Mr. Alltus's death, the police and forensic work that followed, and Mr. Bachtold's and Ms. Alltus's actions following Mr. Alltus's death.

There was also testimony that within the week before Mr. Alltus was shot, he, Ms. Alltus, and Mr. Bachtold visited a neighboring 17-year-old who had previously worked on Patrick Alltus's ranch. During the visit, Ms. Alltus and Mr. Bachtold shot the .410

5

shotgun Patrick Alltus had brought, as well as the young ranch hand's .22 rifle. The ranch hand testified that Ms. Alltus shot the .410 shotgun once or twice and seemed nervous about shooting it, while Mr. Bachtold shot almost an entire box of ammunition.

The State also offered the testimony of Ms. Alltus's father's former girlfriend, who had visited Ms. Alltus in jail following her arrest. She testified that Ms. Alltus told her "that Patrick [Alltus] had been teaching her how to shoot and that she had liked it." 1 RP at 323. She testified that Ms. Alltus also stated that Mr. Alltus had been shot in his hand and the bullet had exited his elbow—facts consistent with the wounds caused by the rifle, but that had not been disclosed to Ms. Alltus by law enforcement.

The State called Mr. Bachtold as one of its last witnesses, on the fourth day of trial, and he testified to his version of his and Ms. Alltus's involvement in the murder.

In the defense case, Ms. Alltus recalled Mr. Bachtold for additional questioning and testified in her own defense. She denied any involvement in her uncle's murder, claiming she was sleeping when awakened by the sound of Mr. Bachtold's shots. She told jurors that she joined Mr. Bachtold in his flight and failed to report to anyone what had happened because she was afraid of Mr. Bachtold.

The jury found Ms. Alltus guilty of all of the charges, but did not find any aggravators the State had alleged for its premeditated murder charge. Although the jury returned its verdict at 9:23 p.m. on the fifth trial day, the State asked for sentencing to be scheduled "as early as tomorrow" because it had "several family members of the victim

present."  3 RP at 211.  The trial court agreed, indicating it would sentence Ms. Alltus at 10:00 a.m. the next morning.  *Id.*  After defense counsel told the trial court, "[W]e cannot possibly prepare the mitigation necessary by ten o'clock tomorrow morning" and asked that it be scheduled on Wednesday, which would have been two days later, the trial court stated it would sentence Ms. Alltus at 3:30 p.m. the following day.  3 RP at 211-12.

The following day, before the sentencing hearing, Ms. Alltus filed a motion asking the court to continue the sentencing hearing and order a presentence report.  She argued that the court could not make an informed decision without knowing more about her difficult family background, certain traumas, and her mental health history.  At the hearing, defense counsel said she had no objection to bifurcating the process so that family members could make statements at that time, with the remainder of the sentencing to be completed later.  The trial court observed that the defense attorney's contract services were ending the following day, to which she responded she would nonetheless make herself available for a continued hearing.  The trial court went forward anyway, observing that the presentence report would add nothing significant from its perspective.

After hearing from the parties and the witnesses, the court sentenced Ms. Alltus to 460 months of total confinement.  Ms. Alltus appeals.

No. 34677-3-III
*State v. Alltus*


ANALYSIS

Ms. Alltus makes eight assignments of error that require review.[2] We first address

her challenges to the court's refusal to continue her sentencing hearing and to its conduct

of that hearing. In the unpublished portion of the opinion we provide additional

procedural background and address the remaining assignments of error.

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO BIFURCATE THE
      SENTENCING HEARING AND ORDER A PRESENTENCING REPORT

Ms. Alltus challenges the trial court's conduct of the sentencing hearing on three

grounds. Because we conclude that the trial court abused its discretion by denying Ms.

Alltus's request for a continuance and preparation of a presentence report, we need not

address her two related arguments that her sentence was a de facto life sentence that

required a *Miller*[3] hearing.

A sentencing hearing shall be held within 40 *court* days following conviction, and

the time for conducting the hearing can be continued for good cause. RCW

---

[2] A due process challenge to the automatic decline procedure raised by Ms. Alltus has since been rejected by the Supreme Court in *State v. Watkins*, 191 Wn.2d 530, 423 P.3d 830 (2018) (reaffirming *In re Boot*, 130 Wn.2d 553, 925 P.2d 964 (1996)).
    Ms. Alltus pre-emptively asks us not to impose costs if the State is the substantially prevailing party on appeal, but panels of the court no longer entertain such argument. A recent general order of this court announced that our clerk or commissioner will henceforth decide these cost issues. *See* Gen. Order to Rescind (Wash. Ct. App. Feb. 19, 2019), http://www.courts.wa.gov/appellate_trial_courts/div3/Order-Rescind%20Deny %20Request%20to%20Award%20Costs%20General%20Order%202-19-19.pdf.
    Ms. Alltus's identification of an alleged scrivener's error in the judgment and sentence is rendered moot by our reversal of her sentence and remand for resentencing.
[3] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

8

9.94A.500(1). The trial court has broad discretion to determine whether there is good cause to postpone sentencing. *State v. Roberts*, 77 Wn. App. 678, 685, 894 P.2d 1340 (1995). We review a court's timing decision for abuse of discretion.

CrR 7.1(a) provides that after a defendant pleads or is found guilty, "the court may order that a risk assessment or presentence investigation and report be prepared by the Department of Corrections, when authorized by law." CrR 7.1(b) identifies what the report is to contain:

> The report of the presentence investigation shall contain the defendant's criminal history, as defined by RCW 9.94A.030, such information about the defendant's characteristics, financial condition, and the circumstances affecting the defendant's behavior as may be relevant in imposing sentence or in the correctional treatment of the defendant, information about the victim, and such other information as may be required by the court.

A comment to the rule states that it "giv[es] the court a measure of discretion to dispense with a report when the appropriate sentence can readily be determined on the basis of the sentencing guidelines score sheet." CrR 7.1, cmt.

"Where the decision of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion." *Farmer v. Davis*, 161 Wn. App. 420, 430, 250 P.3d 138 (2011). Here, the trial court explained that Ms. Alltus did not have any criminal history or finances that would be identified by the report, and it did not believe the report would be helpful to the court in sentencing. 3 RP at 224-26.

9

The responsibilities of a court in sentencing a juvenile must be taken into consideration by the court in exercising its discretion on the timing of the sentencing hearing and whether to order a presentence report. In *State v. Scott*, 190 Wn.2d 586, 416 P.3d 1182 (2018), our Supreme Court reiterated its earlier holding in *State v. Houston-Sconiers*, 188 Wn.2d 1, 20, 391 P.3d 409 (2017) that the Eighth Amendment requires sentencing courts to treat children differently, with discretion, and with consideration of mitigating factors. As the court explained in *Scott*:

> Applying *Miller*, this court held that "[t]rial courts must consider mitigating qualities of youth *at sentencing* and must have discretion to impose any sentence below the otherwise applicable SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW)] range and/or sentence enhancements." [*Houston-Sconiers*, 188 Wn.2d] at 21 (emphasis added). This court explained in *Houston-Sconiers*, "Critically, the Eighth Amendment requires trial courts to exercise this discretion *at the time of sentencing itself*, regardless of what opportunities for discretionary release may occur down the line." *Id.* at 20 (emphasis added).

190 Wn.2d at 594-95 (some alterations in original). The requirements announced in *Houston-Sconiers* are not limited to juveniles who receive de facto life sentences; in *Houston-Sconiers* the teenaged defendants faced sentences of only 26 and 31 years.

The Supreme Court recently reiterated the extent of consideration required:

> [T]he court must consider the mitigating circumstances related to the defendant's youth, including, but not limited to, the juvenile's immaturity, impetuosity, and failure to appreciate risks and consequences—the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, the way familial and peer pressures may have affected him or her, how youth impacted any legal

10

defense, and any factors suggesting that the juvenile might be successfully rehabilitated.

*State v. Gilbert*, 193 Wn.2d 169, 176, 438 P.3d 133 (2019) (citing *Houston-Sconiers*, 188 Wn.2d at 23 (quoting and citing *Miller*, 567 U.S. at 477)).

In requesting that the court bifurcate the sentencing, hear from the victim family members first, and then continue the balance of the sentencing hearing in order to obtain a presentence investigation, Ms. Alltus identified the following matters on which the court should be fully informed:

> Defendant has mental health records from Okanogan Behavioral Health from April 28, 2015 to August 17, 2016 reflecting her ongoing therapy with Lisa Orr, which include:
>> Behavioral Health Assessment
>>
>> Diagnostic Summary
>>
>> Initial Treatment Plan
>>
>> Suicide Risk Assessment
>>
>> 34 Separate Mental Health Progress Notes
>
> Defendant is currently prescribed and taking psychotropic medication.
>
> Defendant was the victim of a Rape/Kidnapping at the age of 13 where the perpetrator was convicted and sentenced to prison.
>
> Defendant[,] who was less than two months past her 16th birthday at the time of the crimes she has been convicted for[,] has significant family issues including extensive CPS interaction, records for which the defense does not possess.
>
> Defendant's biological mother gave up parental rights to her.
>
> Defendant had at least one order of protection with her biological father.

CP at 65 (original numbering omitted).

While the trial court did not need criminal history or financial information, the matters identified by Ms. Alltus were "defendant's characteristics" and "circumstances affecting the defendant's behavior as may be relevant in imposing sentence"—matters that would be covered by a presentence report. CrR 7.1(b). The matters identified were the type of matters our Supreme Court requires sentencing courts to consider when a juvenile is involved, and matters the defense could not reasonably be expected to compile itself in less than a day.

Under these circumstances, we hold that it was an abuse of discretion for the trial court to deny Ms. Alltus's request that the court bifurcate her sentencing hearing and order a presentence report.

The convictions are affirmed. The sentence is reversed and the case is remanded with directions to order a presentence report and, when it has been provided, conduct a new sentencing hearing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ADDITIONAL PROCEDURAL BACKGROUND

Counts 4 and 5 of the State's amended information, dealing with Ms. Alltus's alleged theft of firearms, identified the .22 rifle as the wrongfully obtained firearm for count 4, and the .410 shotgun as the wrongfully obtained shotgun for count 5. In error, counts 6 and 7 of the amended information, dealing with Ms. Alltus's unlawful possession of firearms as a juvenile, identified a .22 rifle as the unlawfully possessed weapon for both charges. No objection to the charging document was made in the trial court.

The State filed motions in limine before trial, the fourth of which requested the exclusion of evidence of Patrick Alltus's character. Specifically, it objected to "testimony about alleged sexual misconduct committed by [him]." Clerk's Papers (CP) at 411. This appears to have been based on the statement Mr. Bachtold provided to deputies in which he first admitted his involvement in the homicide. He told them at that time that "he shot Patrick because he was raping Shalin and had been for a longtime [sic]," including as recently as the morning of September 30. CP at 465. When Ms. Alltus was asked by deputies if this was true, she said it was not.

Ms. Alltus opposed the State's motion, arguing that character evidence that explained Mr. Bachtold's motive for committing the murder was relevant, and excluding it would violate her right to present a defense. After extensive argument, the trial court granted the State's in limine motion.

13

On the fifth day of trial, Ms. Alltus called Mr. Bachtold in the defense case. When the prosecutor completed his cross-examination and defense counsel indicated he had no redirect, the court stated, "Is this witness now excused?" and defense counsel answered, "Yes, Your Honor." 2 RP at 606.

Following a break, the defense called Ms. Alltus. Ms. Alltus testified that she was awakened on the night of Mr. Alltus's death by gunshots, and within minutes Mr. Bachtold came into her room, turned on her light, and said, "I just killed your uncle." 2 RP at 621. The prosecutor objected on hearsay grounds and moved to strike the statement. In discussion outside the presence of the jury, defense counsel argued that it sought to impeach Mr. Bachtold's testimony by offering evidence of this "prior inconsistent statement" he made on the night of the murder. As the State pointed out, however, Mr. Bachtold was never asked during his two appearances as a witness whether he made such a statement. The trial court sustained the State's objection, ruling that without Mr. Bachtold having been asked about it, Ms. Alltus's testimony was not impeachment.

## ANALYSIS

Ms. Alltus's remaining assignments of error include her contention that the first amended information provided inadequate notice that count 7 charged her with the unlawful possession of a .410 shotgun. She challenges three of the court's rulings during trial (in some cases on multiple grounds): its rulings (1) granting the State's fourth

14

motion in limine, (2) refusing to recognize Mr. Bachtold's alleged admission on the night

of the murder as impeachment evidence, and (3) refusing to give a cautionary instruction

about the testimony of an accomplice. We address these remaining assigned errors in the

order outlined.

II.     LIBERALLY CONSTRUED, THE FIRST AMENDED INFORMATION GAVE MS. ALLTUS
        NOTICE OF THE .410 SHOTGUN AT ISSUE IN COUNT 7

A person charged with a crime has the constitutional right to know "the nature and

cause of the accusation" made. WASH. CONST. art. 1, § 22; U.S. CONST. amend. VI ("In

all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the

accusation."). The charging document must include every essential element of the crime

to provide sufficient notice of the charge and the opportunity to prepare a defense. *State*

*v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). "An insufficient charging

document requires reversal and dismissal of charges without prejudice." *State v.*

*Peterson*, 145 Wn. App. 672, 675, 186 P.3d 1179 (2008), *aff'd*, 168 Wn.2d 763, 230 P.3d

588 (2010).

A challenge to the sufficiency of a charging document is of constitutional

magnitude, and may be raised for the first time on appeal. *State v. Campbell*, 125 Wn.2d

797, 801, 888 P.2d 1185 (1995). But when the defendant fails to raise the challenge in

the trial court, we liberally construe the charging document in favor of validity, asking

whether "[1] the necessary facts appear in any form, or by fair construction can they be

found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused [the] lack of notice?" *Kjorsvik*, 117 Wn.2d at 105-06.

Ms. Alltus does not contend she was actually prejudiced by the defect in the charging document, so we need consider only the first inquiry, the focus of which is whether under a liberal construction, "all the words used would reasonably apprise an accused of the elements of the crime charged." *Id.* at 109.

Count 6 of the amended information stated, in relevant part, that "[o]n or between September 30, 2014 and October 1, 2014, in the State of Washington, the above-named Defendant, did knowingly own or possess or control a firearm, *to-wit: .22 rifle*, and the defendant was at that time under eighteen years of age." CP at 450 (emphasis added). Count 7 was identical to count 6 in all respects, so it was clear an error had been made. Nonetheless, Ms. Alltus did not challenge the adequacy of the charging document before trial. And when the jury was instructed that count 7 required proof of Ms. Alltus's possession of a *.410 shotgun*, she did not object that the instruction was inconsistent with the amended information.

Words used in the charging document would reasonably have apprised Ms. Alltus that the second unlawful possession violation was based on her possession of the .410 shotgun. Count 4 had charged her with theft of a .22 rifle, while count 5 had charged her with theft of a .410 shotgun. Ms. Alltus received constitutionally adequate notice.

16

III.   THE TRIAL COURT DID NOT ERR OR DENY MS. ALLTUS'S RIGHT TO PRESENT A
       DEFENSE BY EXCLUDING EVIDENCE OF MR. ALLTUS'S CHARACTER

Ms. Alltus argues the trial court erred because its in limine ruling prevented her

from questioning Mr. Bachtold about his motive in shooting Mr. Alltus.  The court's

actual ruling granted the order requested by the State, however, which was

> an order prohibiting the defense—at *any* point in this trial, including voir
> dire—from arguing, eliciting testimony, offering evidence, suggesting, or
> alluding in any way to the character of the victim, without first providing
> an offer of proof and indicating a proper foundation for such evidence.

CP at 411.  Ms. Alltus advances arguments under both the evidence rules and the federal

and state constitutions.  We begin by addressing the application of the evidence rules.

A.     Character evidence was properly excluded

In moving to exclude any evidence of alleged sexual misconduct by Mr. Alltus,

the State conceded that if Ms. Alltus were claiming self-defense and if she could lay a

proper foundation, some evidence of Mr. Alltus's character might be admissible under

ER 404(a)(2).  Because her defense was general denial, however, it argued that evidence

of Mr. Alltus's character was subject to the general prohibition of character evidence, and

was irrelevant.

In her written opposition to the State's motions in limine, Ms. Alltus argued that

ER 405(b) permits offering evidence of specific instances of a person's conduct in cases

in which character or a trait of character of the person is an essential element of a charge,

claim or defense.  In the extended argument of the in limine motion, Ms. Alltus continued

17

to argue that evidence of Mr. Alltus's bad character—the suspected sexual offenses—was admissible character evidence under ER 405(b).

Citing to Professor Tegland's discussion of ER 404(a)(2), the trial court excluded the evidence. "[W]here [Ms. Alltus] has not claimed self-defense," the trial court ruled, the "character of the victim, the Court's deemed as irrelevant and inadmissible at this time." 3 RP at 157.

We review a court's evidentiary rulings for abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A trial court abuses its discretion when its evidentiary ruling is based on untenable grounds or reasons. *Id*.

As a general rule, character evidence is not admissible to prove that a person acted in conformity with a character trait on a particular occasion. ER 404(a). Evidence of a *victim's* reputation may be admitted in certain circumstances "to show that a victim acted in conformity with his or her character where the defendant claims that he acted in self-defense." *State v. Bell*, 60 Wn. App. 561, 564, 805 P.2d 815 (1991) (citing ER 404(a)(2)). Although she relied on ER 405(b), Ms. Alltus failed to articulate how any evidence that Mr. Alltus was a sex offender was "an essential element of a charge, claim, or defense" within the meaning of the rule.

Ms. Alltus also failed to make an offer of proof or identify a foundation for admissible evidence that Mr. Alltus had committed sexual misconduct. Error may not be predicated on a ruling that excludes evidence unless a substantial right of the party is

18

affected and "the substance of the evidence was made known to the court . . . or was apparent from the context within which questions were asked." ER 103(a)(2). During argument of the motion, the trial court indicated several times that it was not clear about what character evidence Ms. Alltus hoped to offer.[4] We know from the police report in the record that Mr. Bachtold *believed* Mr. Alltus had raped Ms. Alltus, but we know from the same police report that, according to Ms. Alltus, the things that Mr. Bachtold believed were not true.

For the first time on appeal, Ms. Alltus contends that "Ms. Alltus argued the evidence was *not* character evidence" and "[t]he trial court erred in finding the line of questioning . . . *was* character evidence." Appellant's Opening Br. at 31-32 (emphasis added). With a selective citation to the 15 transcript pages' worth of argument on the issue, Ms. Alltus now argues that she was not opposed to a ruling excluding character evidence—she only wished to offer evidence of Mr. Bachtold's state of mind. The trial court's in limine ruling did not prevent Ms. Alltus from asking Mr. Bachtold about his state of mind, only evidence of Mr. Alltus's character. As the trial court observed at one point during argument, "I don't think the Court's prohibiting you from cross examining the co-defendant." 3 RP at 149.

---

[4] *See* 3 RP at 148 ("I guess I'm just not clear as to where you're coming from."); 3 RP at 149 ("I just don't know what evidence you're going to present."); and 3 RP at 157 ("I don't know what the evidence is.").

Ms. Alltus's legal argument in the trial court did address Mr. Bachtold's motivation, but to establish his motivation she continually argued that she had a right to offer character evidence—character evidence she believed qualified for an exception to the general prohibition of such evidence. *E.g.*, CP at 389-90 ("Character of the victim is another **exception** where character can be presented," and "Based on the State's own authority and analysis evidence of victim's character should be allowed under the controlling Rules of Evidence."); 3 RP at 146-47 ("There's an exception as to the character of the victim . . . 405(b) states character evidence can be admitted [not] only through reputation evidence, but clearly specific instances of conduct can also be used."); 3 RP at 155 (in response to trial court's statement that character of a victim is normally irrelevant and inadmissible, stating, "I'm sorry, but I don't believe the case law supports that"); 3 RP at 156 (when the trial court said it would exclude character evidence consistent with *Jones*, defense counsel argued that in *State v. Jones*, 168 Wn.2d 713, 230 P.3d 576 (2010), "In this one case, the victim's character was irrelevant. Not in all cases and this is a Wash. App. case. It's not a Supreme Court case and we would ask to revisit that."). Defense counsel never mentioned "state of mind."

We review a trial court's evidentiary rulings in the context of the legal positions advanced in the trial court. RAP 2.5(a); *cf. State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (refusing to reverse trial court decision admitting evidence where the

20

argument for reversal on appeal is based on a different evidentiary rule than was argued and rejected at trial).

Finally, the court could have excluded even "state of mind" suspicion on relevance grounds, which is addressed in connection with the Sixth Amendment argument that we turn to next.

B.      Ms. Alltus was not denied her right to present a defense

Ms. Alltus makes the further argument that the trial court's ruling deprived her of her constitutional right to present a defense.  The latitude of states to make and apply rules excluding a criminal defendant's evidence "has limits.  'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'"  *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984))).

Evidence rules impermissibly abridge a criminal defendant's right to present a defense if they are "'arbitrary' or 'disproportionate' and 'infringe[ ] upon a weighty interest of the accused.'"  *State v. Rafay*, 168 Wn. App. 734, 796, 285 P.3d 83 (2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), *review denied*,

176 Wn.2d 1023, *cert. denied*, 571 U.S. 867 (2013).  In the exceptional case where an evidence rule abridges a defendant's right to present a defense, we must disregard the rule in order to protect the paramount constitutional right.

The Sixth Amendment concern is with evidence that is relevant but excluded by rules that serve no legitimate purpose or whose restriction is disproportionate to the ends the rules are asserted to promote.  *Scheffer*, 523 U.S. at 308; *State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983).  Article I, § 22 of the Washington Constitution guarantees criminal defendants a right to present testimony in their defense that is equivalent to the right guaranteed by the United States Constitution.  See *Hudlow*, 99 Wn.2d at 14-15.  A claimed violation of the Sixth Amendment right to present a defense is reviewed de novo. *State v. Jones*, 168 Wn.2d at 719.

Evidence that Mr. Alltus had previously raped Ms. Alltus or even evidence that Mr. Bachtold suspected as much naturally presented concerns of relevance and undue prejudice.  Evidence is relevant if it has any tendency to make the existence of a fact of consequence more probable or less probable than it would be without the evidence.  ER 401.

The jury knew that Mr. Bachtold admitted to his role in the murder, so the fact that he suspected Mr. Alltus of sexual misconduct was not needed as motive evidence supporting *his* guilt.  What mattered was whether evidence that Mr. Alltus was guilty of sexual misconduct (character evidence) or was merely suspected of it (state of mind

evidence) made it more probable that Ms. Alltus did not participate in the murder than would be the case without the evidence.

Evidence that Mr. Alltus was guilty or suspected of having raped Ms. Alltus arguably made it *more* probable, not less probable, that she participated in the murder—it introduced a motive that was otherwise lacking. Evidence of Mr. Alltus's real or suspected sexual misconduct did not make it more probable that Ms. Alltus did *not* participate in his murder.

Because evidence of Mr. Alltus's character or suspected character was not relevant to Ms. Alltus's guilt, she had no Sixth Amendment right to present it.

IV.     THE TRIAL COURT'S ERROR IN APPLYING ER 613(b) WAS HARMLESS

Ms. Alltus next argues that the trial court erred by not letting her testify to a "prior inconsistent statement" by Mr. Bachtold and in "den[ying] Ms. Alltus her constitutional right to confront witnesses by preventing her from impeaching [him]." Appellant's Opening Br. at 3. A defendant's right to impeach a prosecution witness with evidence of a prior inconsistent statement is guaranteed by the constitutional right to confront witnesses. *State v. Johnson*, 90 Wn. App. 54, 69, 950 P.2d 981 (1998).

ER 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Case law predating Washington's

adoption of ER 613 required an examiner, before introducing extrinsic evidence of a prior inconsistent statement, to direct the declarant's attention to the content of the allegedly contradictory statement as well as to when and where it was made, and in whose presence. *Johnson*, 90 Wn. App. at 70. Under ER 613(b), however, it is sufficient for the examiner to give the declarant an opportunity to explain or deny the statement either on cross-examination or after the extrinsic evidence is presented. *Id.*

The State argues that even though ER 613(b) allows admission of extrinsic evidence without a prior foundation, a trial court has discretion under ER 611(a)[5] to require foundation questions of the declarant before admitting the extrinsic evidence. It points out that Professor Tegland has observed that "whether the trial court has the authority under Rules 403 and 611 to require the traditional foundation questions . . . despite Rule 613" is an unsettled question. *See* 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 613.14, at 602 (6th ed. 2016). It is unlikely a trial court would abuse its discretion under ER 611(a) if it gave parties advance notice that extrinsic evidence of a witness's prior inconsistent statement would be admitted only if the witness was first given the opportunity to explain or deny it. But a trial court would

---

[5] ER 611(a) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

abuse its discretion if it prevented a criminal defendant from impeaching a witness against him based on a previously-unannounced requirement for the traditional foundation.

In this case, the trial court appears not to have been relying on its authority under ER 611(a). It appears, instead, to have erroneously applied pre-ER 613(b) law. The question remains whether its error was harmless. Under constitutional harmless error review, reversal is not required when it is clear that the error was harmless beyond a reasonable doubt. *State v. Lee*, 188 Wn.2d 473, 509, 396 P.3d 316 (2017) (Gordon McCloud, J., concurring) (citing *State v. Barry*, 183 Wn.2d 297, 302-03, 352 P.3d 161 (2015)).

Setting aside the demeanor of Mr. Bachtold and Ms. Alltus, which we cannot assess, perhaps the most difficult problem for the defense was the implausibility that Mr. Bachtold—being familiar with guns, and according to Ms. Alltus's account, having both the rifle and shotgun at hand—would first use the rifle to injure Mr. Alltus at close range and then set it down, pick up the shotgun, and finish the job.

Ms. Alltus's testimony about Mr. Bachtold's alleged statement, having been offered as impeachment evidence, was not substantive evidence that Mr. Bachtold killed Mr. Alltus. As the trial court had already cautioned jurors in connection with earlier evidence, impeachment evidence "will not support a verdict or a finding in this

25

proceeding." 2 RP at 585. Ms. Alltus's testimony to Mr. Bachtold's statement could

only be considered by jurors as casting doubt on the trustworthiness of his testimony.

Virtually all of Ms. Alltus's testimony about the crime and its aftermath cast doubt

on the trustworthiness of Mr. Bachtold's testimony. The jury was either going to believe

her, or it was not. The incremental value to the defense case of identifying a single

inconsistent statement by Mr. Bachtold—a charge coming from Ms. Alltus, not a neutral

witness—lies somewhere between miniscule and nonexistent. Under these

circumstances, the court's error was harmless beyond a reasonable doubt.[6]

---

[6] As an alternative to her argument that the trial court erred in ruling that Ms.
Alltus's testimony was not impeachment, Ms. Alltus argues that her trial lawyer provided
ineffective assistance of counsel by failing to give Mr. Bachtold an opportunity to explain
or deny his statement before offering extrinsic evidence.

To demonstrate ineffective assistance of counsel, a defendant must show two
things: "(1) defense counsel's representation was deficient, i.e., it fell below an objective
standard of reasonableness based on consideration of all the circumstances; and (2)
defense counsel's deficient representation prejudiced the defendant, i.e., there is a
reasonable probability that, except for counsel's unprofessional errors, the result of the
proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35,
899 P.2d 1251 (1995) (emphasis omitted). A failure to make either showing is fatal to an
ineffective assistance of counsel claim.

Because ER 613(b) permits a party to offer extrinsic evidence of a prior
inconsistent statement without the foundation formerly required, Ms. Alltus's trial
lawyer's performance was not deficient. Even if it had been, given our decision that the
trial court's error was harmless beyond a reasonable doubt, Ms. Alltus would not be able
to establish prejudice.

No. 34677-3-III
*State v. Alltus*

V.      ANY ERROR IN FAILING TO CAUTION THE JURORS ABOUT RELIANCE ON
        ACCOMPLICE TESTIMONY WAS NOT REVERSIBLE ERROR

Ms. Alltus argues the trial court erred when it denied her request that it give jurors

the Washington pattern instruction on weighing the uncorroborated testimony of an

accomplice.  The instruction states:

> Testimony of an accomplice, given on behalf of the State, should be
> subjected to careful examination in the light of other evidence in the case,
> and should be acted upon with great caution.  You should not find the
> defendant guilty upon such testimony alone unless, after carefully
> considering the testimony, you are satisfied beyond a reasonable doubt
> of its truth.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL §

6.05, at 197 (4th ed. 2016) (WPIC)).

In *State v. Harris*, 102 Wn.2d 148, 155, 685 P.2d 584 (1984), *overruled on other*

*grounds by State v. McKinsey*, 116 Wn.2d 911, 914, 810 P.2d 907 (1991), our Supreme

Court explained when the cautionary accomplice instruction should be used:

> We hold: (1) it is always the better practice for a trial court to give the
> cautionary instruction whenever accomplice testimony is introduced; (2)
> failure to give this instruction is always reversible error when the
> prosecution relies solely on accomplice testimony; and (3) whether failure
> to give this instruction constitutes reversible error when the accomplice
> testimony is corroborated by independent evidence depends upon the extent
> of corroboration.  If the accomplice testimony was substantially
> corroborated by testimonial, documentary or circumstantial evidence, the
> trial court did not commit reversible error by failing to give the instruction.

(Emphasis omitted.)

27

During the instruction conference, the trial court consulted the notes on use to Washington's pattern instructions and pointed out to Ms. Alltus's lawyer that the note on use for WPIC 6.05 states, "Do not use this instruction if an accomplice or codefendant testifies for the defendant." 2 RP at 688 (quoting WPIC 6.05, Note on Use). The court continued, "Clearly, in this case the defense called [Mr. Bachtold] to testify." *Id.* When defense counsel argued that even if Mr. Bachtold was called by the defense, he "did not testify *on behalf of* the defense," the trial court persisted in its refusal to give the instruction, stating, "[Y]ou asked specifically that he be brought up for the purposes of the defense. You, in fact, conducted direct examination . . . . He became your witness as such." *Id.* at 688-89 (emphasis added).

On appeal, Ms. Alltus argues that because the focus of her examination of Mr. Bachtold in the defense case was impeachment, the fact that she called him as a witness should not weigh against her right to have the jury cautioned about his testimony. Neither party cites any case law on whether, or for what purpose, calling an accessory as a witness in the defense case makes a difference. We need not address the issue because there was substantial corroborating evidence for Mr. Bachtold's testimony. Accordingly, any error was not reversible error.

Ms. Alltus focuses on the fact that the only *direct* evidence of her participation in the murder came from Mr. Bachtold, but *Harris* holds that substantial circumstantial corroboration will suffice. 102 Wn.2d at 155. Ms. Alltus admitted she was in the home

and knew her uncle had been murdered. The State had abundant evidence that in the week following the murder Ms. Alltus had opportunities daily, in some cases for hours at a time, to tell someone that her uncle had been killed—and she never did. Even in her own cross-examination, she admitted that she and Mr. Bachtold made numerous stops on the drive to Curtin, and once in Curtin, Mr. Bachtold was sometimes away from her motel room for hours. 2 RP at 654-58. She admitted to their early contact with an Oregon state trooper, yet she did not use it as an opportunity for escape from Mr. Bachtold or even as an opportunity to provide truthful information that would help Washington authorities find her. Instead, she provided the trooper with a false name and told him she had no identification, when she actually did. Testimony from other witnesses strengthened the case that Ms. Alltus failed for a week to act on opportunities to tell someone what had happened.

The State also called a young woman who had roomed in a juvenile detention facility with Ms. Alltus while Ms. Alltus awaited trial. The roommate testified that Ms. Alltus told different stories about the murder, including that she wanted Mr. Bachtold to kill her uncle but didn't believe he would do it, and that she wanted to push Mr. Alltus into a fire so there would be evidence of only an accident, not a murder. The roommate also testified that Ms. Alltus tried to persuade her to write a statement falsely claiming to have been told things by Mr. Bachtold about the murder.

The State presented substantial circumstantial corroboration of Mr. Bachtold's testimony that Ms. Alltus participated in her uncle's murder.

The convictions are affirmed. The sentence is reversed and the case is remanded with directions to order a presentence report and, when it has been provided, conduct a new sentencing hearing.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.